CLR CORPORATION, Plaintiff,

v.

Lowell HENLINE, Jay Waalkes, Gordon Foster, Defendants.

No. G 79–687 CA.

United States District Court,
W. D. Michigan, S. D.

Aug. 5, 1981.

Noel Lippman, Almont, Mich., for plaintiff.

William J. Garlington, Wyoming, Mich., for defendants.

## OPINION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

MILES, Chief Judge.

Plaintiff alleges that defendants, acting under color of state law, in particular Article XVI, Section 60.75 of the zoning ordinance of the City of Wyoming, Michigan, refused to issue an occupancy permit for plaintiff's so-called "adult business" in violation of the First and Fourteenth Amendments to the United States Constitution. Pursuant to 42 U.S.C. § 1983, with jurisdiction under 28 U.S.C. § 1343(3), plaintiff requested declaratory and injunctive relief under Fed.R.Civ.P. 57 and 28 U.S.C. §§ 2201 and 2202. Adopting the Report and Recommendation of the U.S. Magistrate, who held a hearing, and after consideration of the parties' briefs and objections, this Court denied a preliminary injunction on April 16, 1980. The matter is now before the Court on plaintiff's motion for summary judgment filed April 1, 1981, and defendants' oral motion for summary judgment of June 3, 1981. Both parties have thoroughly briefed and argued the matter to the Court.

## FACTUAL BACKGROUND

The material facts in this matter are undisputed. Plaintiff C.L.R. Corporation (CLR) describes itself as:

... in the business of operating various commercial establishments throughout the State of Michigan which offer to the public a variety of goods and sundry objects including, but not limited to, books, magazines and films, as well as marital aids; that petitioner offers, through its retail outlets throughout the State of Michigan, a full line of press materials, amongst which include books, magazines and films that treat sex and nudity in an honest, explicit and forthright manner; that Petitioner wishes to operate one of its commercial establishments at 406 28th Street, S.E. Wyoming, Michigan.

(Complaint at 3). Plaintiff purchased the premises, a former corner gas station, and applied for a building permit to "Remodel existing gas station service building to Variety store" (Pl's Ex. B). The permit was issued and work commenced. Defendants approved the final inspection of the building remodeling on July 19, 1979, but an occupancy permit was withheld pending determination of classification of occupancy, because:

Prior to a certificate of occupancy being issued it became apparent to the Building Inspector and the head of the Building Inspections Department of the City of Wyoming that the building was intended for and being remodeled for use as an "adult bookstore." Upon learning of this, Chief Jay Waalkes, the head of the Inspections Department, informed plaintiff that it would have to comply with Section 60.75 of the zoning code of the City of Wyoming which required a special use approval by the Planning Commission prior to occupancy for said use. As such a special permit had not been obtained, no certificate of occupancy was issued.

(Answer at 1). It further appears that, if the ordinance is valid, no such permit can be issued because the site is less than 500 feet from a residence, though it meets all other requirements including its location in a B-2 zone more than 1,000 feet from any similar use. The residence in question is not in the City of Wyoming, but rather is about 250 feet away in the City of Grand Rapids, across the street and behind a shallow business zone.

## LEGAL ISSUES

Plaintiff challenges the ordinance on four grounds: first, vagueness; second, prior restraint; third, equal protection; and fourth, extraterritorial application.

Defendants respond that the ordinance is valid under the holding of the Supreme Court in *Young v. American Mini Theaters, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), contains adequate definitions and standards, and properly applies to plaintiff. Defendants also contend that plaintiff is guilty of "unclean hands" in applying as a "variety store," lacks standing to assert vagueness, has failed to exhaust administrative remedies, and is guilty of laches. Finally, defendants urge this Court to abstain because there is as yet no prosecution.

■ It is appropriate to address at the outset defendant's argument that this Court should abstain from exercising its jurisdiction based upon the doctrine enunciated in *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and subsequent cases. "The paradigm case for abstention arises when the challenged state statute is susceptible of 'a construction by the state courts that would avoid or modify the [federal] constitutional question . . .'" *Lake Carriers Assn v. Mac-Mullan*, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972). The difficulty with defendants' argument is that they have failed to show how a determination of state law can avoid or modify the constitutional question presented. Indeed, defendants vigorously contend that no such construction is possible. Nor is there any pending criminal prosecution in a state court to justify abstention under the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Abstention cannot properly be invoked under the facts of this case.

■ Defendants' claim that plaintiff is guilty of laches is similarly without a basis in fact. Plaintiff was first informed that an occupancy permit would not be issued on July 19, 1979, and filed a complaint in this Court on November 29, 1979, five months later. Laches requires an unreasonable delay on the part of the plaintiff which is prejudicial to the defendant. No facts are alleged to support such a claim, nor is five months a very long delay between the first indication of a dispute and the filing of suit in a federal court. In this case, only the plaintiff could be harmed by any delay; there is no indication of any harm to the defendant. The claim is not barred by the doctrine of laches.

■ Nor is there any indication that the plaintiff applied as a "variety store" in bad faith. Nothing more than speculation has been brought forward to support a claim that plaintiff is guilty of "unclean hands." Neither laches nor the unclean hands doctrine is a bar to equitable relief in this case.

■ Defendants also allege that plaintiff has failed to exhaust administrative remedies by failure to apply to the Planning Commission for a special use permit. However, the transcript of the hearing before the magistrate makes it obvious that the Planning Commission could not grant such a permit because the restrictions in the ordinance cannot be met at the site owned by plaintiff. In oral argument, it became clear that what defendants mean by exhaustion of administrative remedies is that plaintiff should be required to acquire a different site in one of three areas on the other side of the City of Wyoming which meet the restrictions, apply for a special use permit, and await the decision of the Planning Commission on the application. The Supreme Court has stated that:

> . . . our decisions have made clear that a person faced with such an unconstitutional licensing law may ignore it and engage with impunity in the exercise of the right of free expression for which the law purports to require a license. "The Constitution can hardly be thought to deny to one subjected to the restraints of such an ordinance the right to attack its constitutionality, because he has not yielded to its demands."

*Shuttlesworth v. Birmingham*, 394 U.S. 147, 151, 89 S.Ct. 935, 939, 22 L.Ed.2d 162 (1969). Plaintiff did not take this permissible

course of disobeying the law and asserting a federal defense to prosecution, but abided by the law while affirmatively seeking a declaration of its unconstitutionality. Plaintiff made the necessary applications for building and use permits, merely declining to apply for an allegedly unconstitutional special use permit, which concededly cannot be issued under the challenged statute. Plaintiff's action is not barred for failure to exhaust administrative remedies.

■ Defendants also challenge plaintiff's standing to raise the purported vagueness of the ordinance. Such a bar draws support from the decision in *Young v. American Mini Theaters*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), where the court held that plaintiffs clearly covered by an ordinance somewhat similar to the Wyoming ordinance could not raise the issue of vagueness as applied to others. The Detroit ordinance, however, included exhaustive definitions of the coverage of the ordinance, particularly with regard to definitions of "adult bookstore" and "adult theater." The Wyoming ordinance, in contrast, contained no definitions of these terms at the time it was applied to deny a use permit for plaintiff's premises, though a definition of "adult bookstore" which would cover plaintiff's proposed establishment was added to the ordinance on February 18, 1980, while the application for a preliminary injunction was pending, and ten days after the filing of the magistrate's report and recommendation. Under these circumstances, where the business is not yet in operation and the ordinance contained no definitions at the relevant time, plaintiff has standing to raise the issue of vagueness.

## ANALYSIS

### I. The Ordinance

The challenged ordinance originated as a line addition to the special use listing of the Zoning ordinance:

| USE | ZONING DISTRICTS PERMITTED | OTHER REQUIREMENTS |
|---|---|---|
| Adult film theaters, adult book stores, massage parlors | B-2 | Not permitted in locations within 500 feet of existing church, school, or residence. Not permitted in locations within 1,000 feet of an existing adult film theater, adult book store, or massage parlor. |

The ordinance contains no "minimum lot area," "special minimum yard special requirements," or "special screening requirements" for these "adult uses," but details a number of other special uses, some of which have such requirements, and outlines procedure for application to the Board of Zoning Appeals. The ordinance was amended on July 2, 1979, with an effective date of July 17, 1979, the same day final inspection of plaintiff's premises as requested, to transfer these responsibilities to the Planning Commission:

*60.99 Special Uses.* All special uses as provided in this Chapter shall be approved by the Planning Commission in accordance with the following procedures and standards:

1.) The procedures for a special use shall be as follows:

A.) An application for a special use shall be submitted to the City Planner, accompanied by development plans, which shall conform to all requirements of this Chapter.

B.) The Planning Commission shall conduct a public hearing on said application in accordance with the normal procedure for public hearings before the Commission.

C.) Following said hearing the Planning Commission may grant approval for said application provided it shall find that the proposed use meets with the requirements of this Section.

2.) In granting approval for a special use, the Planning Commission may impose such requirements and conditions as may be necessary to protect neighboring property, promote public convenience, health, safety and welfare or make the use conform more closely with the spirit, purpose and intent of this Chapter.

3.) In determining other requirements and whether the proposed use is essential and desirable, the following standards shall be followed by the Planning Commission:

A.) The possible substantial and permanent adverse effect on neighboring property.

B.) The consistency with the spirit, purpose and intent of this chapter.

C.) The possible adverse effect on traffic as related to the streets, churches, schools and any buildings within the immediate area.

D.) The tendency of the proposed use to create any type of blight within the immediate area.

E.) The economic feasibility for the area.

F.) Any other factor as may relate to the public health, safety and welfare for persons and property.

G.) That all other provisions of this chapter are met for the proposed use.

4.) Prior to granting approval for or denying a special use application, the Planning Commission shall make findings of fact as to the above standards. In the event that the Planning Commission fails to make findings of fact as required by this Section, the special use permit shall be null and void and no building or occupancy permit shall be issued.

The other section of the ordinance to which defendants call the Court's attention is the amendment enacted subsequent to the commencement of this suit to add definitions:

2A.) ADULT BOOK STORE—Any establishment which devotes more than 5% of its gross floor area to any one of a combination of the following: the sale of books, magazines, newspapers, film, slides, video tapes, audio tapes, records, pictures, or other materials which portrays sexual activities which are erotic, or which are, by their nature, designed or intended to arouse erotic sensations, which sale is by vending machines or other means.

The viewing of sexual activities or any other erotic oriented films, movies, tapes, or any other materials.

Any place where the proprietor or owner only permits adults because of the type of material being viewed or sold in this establishment.

Because these definitions were not in effect at the time plaintiff was denied an occupancy permit, nor were they in effect until after the hearing on a preliminary injunction, it would be inappropriate for the Court to consider them. However, were the court to consider them, it is apparent that they would raise issues of vagueness and overbreadth.

It is apparent from the ordinance that the requirements of 1,000 foot spacing from any other adult use and 500 foot spacing from any residence, church, or school cannot be waived by the Planning Commission, because the commission cannot find that the 500 foot requirement is met under Section 60.99(3)(g) of the ordinance, with the result that no occupancy permit can be issued under Section 60.99(4).

It is noteworthy that the Wyoming ordinance is not the same as the Detroit ordinance upheld in *Young v. American Mini Theaters*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). The Detroit ordinance prohibited the location of an adult theater or bookstore within 1,000 feet of any *two* other "regulated uses," but such uses were more broadly defined to include adult theaters, adult minitheaters, adult bookstores, topless cabarets, establishments for the sale of beer or intoxicating liquors for consumption on the premises, hotels or motels,

pawnshops, pool or billiard halls, public lodging houses, secondhand stores, shoeshine parlors, and taxi dance halls. The Detroit ordinance also prohibited the location of adult theaters, minitheaters, and bookstores within 500 feet of a building containing a residence, and provided for waiver of the 500 foot requirement by the Commission:

> If the person applying for the waiver shall file with the City Planning Commission a petition which indicates approval of the proposed regulated use by 51 per cent of the persons owning, residing, or doing business within a radius of 500 feet of the location of the proposed use...

and if certain factual findings are made, *Nortown Theatre Inc. v. Gribbs*, 373 F.Supp. 363, 366 (E.D.Mich.1974). In contrast, the Wyoming ordinance restricts an adult use, more narrowly defined, from areas within 500 feet of a residence, church, or school, without possibility of waiver, and prohibits such use within 1,000 feet of any *one* other adult use. The 500 foot requirement in issue here is plainly more stringent than that in the Detroit ordinance.

## II.  YOUNG v. AMERICAN MINI THEATERS

This Court must decide whether the challenged provisions of the Wyoming ordinance are constitutional under the standards set out in *Young v. American Mini Theaters*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). That determination is made more difficult by both the restricted nature of the issues actually decided on appeal, and by the differences between the plurality opinion of the Court and the concurring opinion of Justice Powell. One commentator summarized the difficulty with *Young* as:

> In the wake of *Mini Theaters*, many municipalities enacted pornography zoning laws, usually imitating Detroit by requiring adult businesses to be dispersed. Apparently these municipalities interpreted *Mini Theaters* to approve pornography zoning, or at least deconcentration plans, as constitutionally acceptable in nearly all circumstances. This interpretation seems

incorrect, however. Detroit's pornography zoning was found to satisfy three established first amendment criteria; future ordinances that restrict the location of adult bookstores and theaters will likely be subject to these criteria as well.

> ... First, regulations must be motivated not by distaste for the speech itself but by a desire to eliminate its adverse effects ....

> ... Second, even properly motivated legislation may be unconstitutional if it severely restricts first amendment rights ....

> ... Third, even a properly motivated ordinance with only a limited impact on free expression may be unconstitutional under *Mini Theaters* if the municipality cannot demonstrate an adequate "factual basis" for its conclusion that the ordinance will minify the evils at which it is aimed.

91 Harv.L.Rev. 1427, 1557–1559. This conclusion, that the *Young* holding is more narrow than commonly assumed, is also supported by a note to the plurality opinion:

> The situation would be quite different if the ordinance had the effect of suppressing, or greatly restricting access to, lawful speech. Here, however, the District Court specifically found that "[t]he Ordinances do not affect the operation of existing establishments but only the location of new ones. There are myriad locations in the City of Detroit which must be over 1,000 feet from existing regulated establishments. The burden on First Amendment rights is slight." 373 F.Supp. at 370.

427 U.S. 71–72, n. 35, 96 S.Ct. 2453, n. 35.

In the plurality opinion in *Young*, Justice Stevens wrote for the Court:

> Even though the First Amendment protects communication in this area from total suppression, we hold that the State may legitimately use the content of these materials as the basis for placing them in a different classification from other motion pictures.

The remaining question is whether the line drawn by these ordinances is justified by the city's interest in preserving the character of its neighborhoods.

. . . The record discloses a factual basis for the Common Council's conclusion that this kind of restriction will have the desired effect . . . .

Since what is ultimately at stake is nothing more than a limitation on the place where adult films may be exhibited, . . . We hold that the zoning ordinances requiring that adult motion picture theaters not be located within 1,000 feet of two other regulated uses does not violate the Equal Protection Clause of the Fourteenth Amendment.

427 U.S. at 70–73, 96 S.Ct. at 2452–53. Justice Powell's concurring opinion sets out a different analysis, taken from *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968):

Under that test, a governmental regulation is sufficiently justified, despite its incidental impact upon First Amendment interests, "if it is within the constitutional power of the government, if it furthers an important or substantial government interest, if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on . . . First Amendment freedoms is no greater than is essential to the furtherance of that interest."

427 U.S. at 79–80, 96 S.Ct. at 2457. The opinions in *Young* left this Court with the impression that there was a lack of agreement among the Justices as to the appropriate test to apply, as well as to the reach of *Young*. On the eve of oral argument in this case, the Supreme Court announced its opinion in *Schad v. Borough of Mount Ephraim*, —— U.S. ——, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981), which both reinforced this Court's impression of a diversity of views in the Supreme Court, and answered some questions about the scope of *Young*. In *Schad*, Justice White wrote for the Court, distinguishing between the standard of review where zoning ordinances affect property interests and the standard of review where zoning ordinances affect a protected liberty. As to the latter:

. . . when a zoning law infringes upon a protected liberty, it must be narrowly drawn and must further a sufficiently substantial government interest . . . the Court must not only assess the substantiality of the governmental interests asserted but also determine whether those interests could be served by means that would be less intrusive on activity protected by the First Amendment.

101 S.Ct. 2182–2184. The Court indicated that the case was not controlled by *Young*, and found that none of Mount Ephraim's asserted justifications were adequate for its substantial restriction of protected activity.

The concurring opinions in *Schad* also provide guidance on several other issues relevant here. Justice Blackmun wrote:

First, I would emphasize that the presumption of validity that traditionally attends a local government's exercise of its zoning powers carries little, if any, weight where the zoning regulation trenches on rights of expression protected under the First Amendment. In order for a reviewing court to determine whether a zoning restriction that impinges on free speech is "narrowly drawn [to] further a sufficiently substantial governmental interest," *ante*, [101 S.Ct.] at 2182–2183, the zoning authority must be prepared to articulate, and support, a reasoned and significant basis for its decision . . .

My other observation concerns the suggestion that a local community should be free to eliminate a particular form of expression so long as that form is available in areas reasonably nearby. In *Mini Theaters* the Court dealt with locational restrictions imposed by a political subdivision, the City of Detroit, that preserved reasonable access to the regulated form of expression within the boundaries of the same subdivision. It would be a substantial step beyond *Mini Theaters* to conclude that a town or county may legislatively prevent its citizens from engaging in or having access to forms of pro-

tected expression that are incompatible with its majority's conception of the "decent life" solely because these activities are sufficiently available in other locals. I do not read the Court's opinion to reach, nor would I endorse that conclusion.

101 S.Ct. 2187. Justices Powell and Stewart also joined in the following:

I join the Court's opinion as I agree that Mt. Ephraim has failed altogether to justify its broad restriction of protected expression.

101 S.Ct. 2188.

The defendants have, throughout this case, argued that *Young* permits the ordinance with little reference to specific requirements or specific state interests to support that ordinance. There is no ready application of the interests asserted in *Young* to the facts of this case. There, the 1,000 foot dispersion requirement was upheld because of the City's demonstrated interest in avoiding blight. There was specific legislative history and a factual background of expert study to support the position that concentration of adult uses led to the decline of neighborhoods. No such factual basis or legislative history exists in this case. All that the defendants have asserted is:

Defendants believe that they should be allowed the opportunity in the course of a trial to present the rationale and legislative history upon which the ordinance is based. In addition, defendants do not believe that it is necessary for the City of Wyoming to have a separate legislative history when the experience of the City of Detroit and other areas who have attempted to exercise some type of control over these uses has been so thoroughly documented.

(Brief in Opposition to Motion for Summary Judgment at 9–10). This argument attempts to bootstrap the deconcentration rationale to justify the 500 foot restriction actually found invalid by the district court, and not appealed, in *Young*.

Even if this were a valid means of analysis, and the opinions in *Schad* would seem to indicate it is not, the Court in *Young* relied on the District Court's finding that there were "myriad locations in the City of Detroit which must be over 1,000 feet from existing regulated establishments," 427 U.S. at 71–75, n. 35, 96 S.Ct. at 2453, n. 35, to determine that there was a slight burden on First Amendment interests.

■ In contrast, every location in the City of Wyoming is apparently over 1,000 feet from such a regulated establishment, as there are no such establishments in the City of Wyoming, though defendants are careful to point out that such establishments do exist in the adjacent City of Grand Rapids. But the triple requirements in the Wyoming ordinance that an adult business be located in a B–2 zone more than 1,000 feet from a similar establishment and more than 500 feet from any residence, church, or school are substantially more restrictive. At the hearing before the magistrate, defendant Foster, Chief Building inspector of the City of Wyoming, who described his function as "I am the Zoning Department," (Tr. 8), testified as to the locations in the City of Wyoming where an adult bookstore might legally locate under the ordinance without running afoul of the 500 foot requirement. He testified that such a business, subject to the approval of the Planning Commission, might locate on 900 feet of frontage on the north side of West 28th Street east of Burlingame Avenue, 200 feet of frontage on the south side of West 28th Street west of Byron Center Avenue, and 1400 feet of frontage on the north side of West 28th Street west of Byron Center Avenue east of the city limits. (Ex. 1, Tr. 21–22). It would appear that, depending upon exact locations, a maximum of between two and four adult uses would be permitted in a city of 62,000 to 64,000 people, 25 square miles in area, and those sites would all be located on a total of 2,500 feet of frontage on West 28th Street within a mile and a half of the western city limits. The existence of between two and four massage parlors could, under the ordinance, preempt the location of any adult bookstore or theater anywhere within the City of Wyoming. The limited

sites for regulated uses are concentrated, rather than dispersed. The interests asserted in *Young* do not justify an ordinance such as this, which severely restricts the opportunity for the exercise of First Amendment rights both by the plaintiff and by the residents of the City of Wyoming.

Having failed throughout this litigation to assert any interest to justify the ordinance, defendants now argue that they are entitled to a trial to demonstrate such interests. They assert no particular interest and provide no affidavits in response to the motion for summary judgment. They allege the existence of no disputed facts. Their counsel candidly admitted in oral argument that they must lose if the interest is required to be one actually considered and relied upon when the ordinance was enacted. Defendants would apparently, if given an opportunity at trial, seek to introduce as yet undiscovered expert testimony as to possible adverse effects of plaintiff's business on the community, and a factual basis to support the position that the ordinance narrowly meets these adverse effects, though no such interests or factual bases were in fact considered by the Wyoming City Council in enacting the ordinance. The Court is convinced that there is in fact no rationale, state interest, or legislative history to be presented from the testimony of defendant Foster and City Clerk Gress at the hearing before the magistrate. Both were subpoenaed by plaintiff to appear and required to bring with them:

> any and all documents, studies, reports, surveys, memoranda, recommendations or findings whether same be done by or for the Inspections Department of the City of Wyoming, the City of Wyoming Board of Zoning Appeals, the city council of the City of Wyoming, and/or any official of the City of Wyoming, which documents, studies, reports, surveys, memoranda, recommendations or findings deal with, relate, or pertain to, the need for, purpose, intent or justification for the Adult Business Zoning Ordinance of the City of Wyoming, Michigan, and any amendments thereto.

(Tr. 11). Both brought, in response to the subpoena, only the zoning ordinance and other exhibits included in the record as Exhibits A & B. In addition, both testified under oath, and defendants' counsel represented to the Court, that nothing else existed (Tr. 3–4, 9–14, 30–32). The records searched by the City Clerk included the minutes of the City Council (Tr. 30).

■ Defendants' position misapprehends the nature of the equal protection analysis required by *Young*. Were the standard merely one of a rational basis, then the Court might consider possible, rather than actual, state interests to justify the ordinance. Such would be the case were there no First Amendment issue involved, *Schad*, 101 S.Ct. at 2182–2184. But *Young* requires more, under a standard that approximates strict scrutiny though it is rarely labeled as such: that is, an underlying factual basis to support the conclusion of the legislative body that the ordinance, narrowly drawn, furthers a substantial or important state interest which a narrower restriction will not. Even if this is so, the courts still inquire into whether the resulting burden on First Amendment interests is too severe. *Young* requires actual state interests, actually considered upon a factual basis before the legislative body at the time the action is taken, not speculation in the course of subsequent litigation.

Even if the Court were permitted and inclined to search outside the record for a state interest to justify the ordinance, it would be difficult to justify the ordinance solely on the basis of the impact on Wyoming's residential neighborhoods of the location of the plaintiff's adult bookstore less than 500 feet from a house located not in Wyoming, but rather in Grand Rapids. The Court is not informed whether Grand Rapids gives similar "protection" to its residents, but the interest of Wyoming, regardless of its claimed authority to consider matters beyond its borders in zoning, is certainly less in terms of constitutional justification when it applies its ordinance extraterritorially. In addition, this case is apparently the only time that distance requirements under the Wyoming zoning or-

dinance have ever been measured outside of the territorial limits of the City of Wyoming (Tr. 25–26).

The ordinance is void as a violation of the Equal Protection clause of the Fourteenth Amendment under the standards set out in the plurality opinion in *Young* because of the complete failure of the defendants to assert any state interest to justify the ordinance.

The alternative analysis in Justice Powell's concurring opinion reaches the same result. First, there is no question that the zoning ordinance is within the constitutional power of the City of Wyoming, *Euclid v. Ambler Realty*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). Second, as previously stated, defendants have demonstrated no important or substantial governmental interest to justify the ordinance, and have steadfastly denied the existence of any evidence of such an interest. Third, the Court cannot find that a nonexistent governmental interest is either related or unrelated to the suppression of free expression. Fourth, there is a severe restriction on First Amendment interests from this ordinance in the factual context of the City of Wyoming. This impact is too severe to withstand an equal protection attack where no state interest is asserted.

### III. CONCLUSION

Under either *Young* analysis, the adult business special use provisions of the Zoning Code of the City of Wyoming are unconstitutional as a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. This Court need not reach the issue of vagueness and prior restraint.

For the reasons stated, the plaintiff's motion for summary judgment is granted. The defendants' oral motion for summary judgment is denied. Plaintiff will submit an appropriate order for injunctive relief.

IT IS SO ORDERED.