**PATEL AND PATEL, a general partnership, Plaintiff,**

v.

**CITY OF SOUTH SAN FRANCISCO, a municipal organization, et al., Defendants.**

**No. C–84–7056 SAW.**

United States District Court, N.D. California.

April 19, 1985.

Douglas Gillies, Swaner, Leslie, Flenniken & Gillies, San Francisco, Cal., for plaintiff.

Frank T. Sabaitis, Ropers, Majeski, Kohn, Bentley & Wagner, San Francisco, Cal., for defendants.

## MEMORANDUM AND ORDER

WEIGEL, Senior District Judge.

### FINDINGS OF FACT

Plaintiff Patel and Patel is a general partnership which at all relevant times

owned the E.B. Motel, 1201 Airport Boulevard in South San Francisco. The guest rooms are equipped with television sets. Since 1978, one of the thirteen available channels included non-obscene, sexually explicit programs.[1] The motel does not advertise nor in any way indicate the availability of the channel.

In 1982, the city Council of South San Francisco enacted Chapter 20.38 of the city's Municipal Code, an "Adult Entertainment Ordinance" ("Ordinance"). The declared purpose of this amendment to the city's zoning ordinance, "is to insure that adverse effects of adult entertainment uses will not contribute to the blighting or downgrading of zones in which they are permitted or of surrounding neighborhoods; will not adversely affect minors; and will not offend those citizens of the City who do not wish to be exposed to sexually oriented material."

South San Francisco's Adult Entertainment Ordinance provides that "Adult entertainment businesses are permitted only in areas with a C-3 zoning classification." In addition, no adult entertainment business may be within: 500 feet from a residential district, 1000 feet from any church, 1000 feet from any playground or 500 feet from any other adult entertainment use.

"Adult Entertainment Businesses" include "adult motels", which are defined as follows:

3. "Adult motel"—a motel or similar establishment offering public accomodations, for any form of consideration, which provides patrons with closed-circuit television transmissions, films, motion pictures, video cassettes, slides or other photographic reproductions which are characterized by an emphasis upon the depiction or description of "specified sexual activities" or "specified anatomical areas"; [2]

Municipal Code § 20.38.030(3).

Plaintiff concedes that the programs shown on the "adult" channel "include material that is defined as 'adult' in Chapter 20.38 of the South San Francisco Municipal Code".

The E.B. Motel is located in a district designated "C-2" in the city's General Plan. Thus the motel is considered a non-conforming use in violation of the city's zoning ordinance. Section 9.3 of City Ordinance No. 353 of the City of South San Francisco directs the City Attorney to commence an action to enjoin the violation of zoning ordinances.

On February 16, 1984, the city's Director of Community Development notified plaintiff that "Pursuant to Chapter 20.38 of the South San Francisco Municipal Code, the adult entertainment business presently being conducted at 1201 Airport Boulevard in the City of South San Francisco shall be terminated on or before March 5, 1984." Plaintiff appealed from the Director's determination, which the Planning Commission affirmed on April 26, 1984.

At their regular meeting on July 13, 1984, the City Council determined that the E.B. Motel continued to be in violation of the zoning ordinance. On October 4, 1984, Robert K. Rogers, the City Attorney wrote to the partners of Patel & Patel: "unless you discontinue the adult entertainment portion of the business known as the E.B. Motel ... I will seek preliminary and in-

---

1. Defendants acknowledge that "[t]he economic viability of the motel business [would] not be jeopardized by removing the closed circuit adult t.v. programming from the motel rooms."

2. Section 20.38.030(10)(B) states:
   For the purposes of this chapter, "specified sexual activities" shall include the following:
   1. Human genitals in a state of sexual stimulation or arousal;
   2. Acts of human masturbation, sexual intercourse or sodomy;
   3. Fondling or other erotic touching of human genitals, pubic region, buttock or female breast.
   Section 20.38.030(10)C. states:
   For the purpose of this chapter, "specified anatomical areas" shall include the following:
   Less than completely and opaquely covered (1) human genitals or public region; (2) buttock, and (3) female breast below a point immediately above the top of the areola.

junctive relief against you in the Superior Court of the State of California."

On November 8, 1984, plaintiff filed a complaint seeking, *inter alia*, a declaration that "those provisions of the City of South San Francisco Zoning Ordinance, Chapter 20.38, which purport to regulate adult motels [are] unconstitutional on their face and as applied to plaintiff." Plaintiff also seeks an injunction restraining the city from enforcing against plaintiff any of the provisions of its zoning ordinance relating to the location and operation of adult entertainment businesses.

The City filed a counterclaim on February 15, 1985, seeking a declaration that the adult entertainment ordinance is a constitutional land-use regulation and moving for a preliminary injunction to prohibit Patel & Patel "from operating an adult entertainment business", "including but not limited to the showing of closed circuit adult entertainment television programs in motel rooms...."

## CONCLUSIONS OF LAW

### 1. Procedural Considerations

■ It is well established that a federal court may grant injunctive and declaratory relief against enforcement of an ordinance alleged to violate rights of free speech, so long as there are no state proceedings underway. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *see also Morial v. Judiciary Comm'n of Louisiana*, 565 F.2d 295, 298 (5th Cir.1977), *cert. denied*, 435 U.S. 1013, 98 S.Ct. 1887, 56 L.Ed.2d 395 (1978) ("[C]hallenges to laws burdening first amendment rights are among the essential bulwarks of a system of free expression."). Plaintiff's complaint alleges that plaintiff is being threatened with enforcement of an invalid ordinance in violation of its free speech rights. Thus it states a claim for affirmative relief under 42 U.S.C. § 1983, and for declaratory relief under 28 U.S.C.

§ 2201. Jurisdiction is proper under 28 U.S.C. § 1343.

■ It is not disputed that the city will enforce the Ordinance against plaintiff unless this Court prevents it. In fact, defendants seek to enforce the Ordinance in their counterclaim in this very action. Thus, plaintiff's claim is ripe for adjudication. *See Doran, supra.*

■ Defendants, on the other hand, fail to state a federal claim. In seeking a declaration that Chapter 20.38 is constitutional and an injunction enforcing that Ordinance, defendants merely anticipate that plaintiff would raise a constitutional defense if defendants sued to enforce the Ordinance. Under the well-pleaded complaint rule, defendants' claim does not *arise* under federal law. *Cf. Louisville & Nashville R.R. v. Mottely*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

Nonetheless, defendants' claim for declaratory relief is within this Court's ancillary jurisdiction. This claim is the mirror-image of plaintiff's and thus arises from the same "transaction or occurrence." *See L & E Co. v. United States ex rel. Kaiser Gypsum Co.*, 351 F.2d 880, 882 (9th Cir. 1965).

Arguably, defendants' claim for injunctive relief is also within the ambit of the Court's ancillary jurisdiction. However, in light of its disposition on the merits, this Court need not decide the issue.

### 2. The Merits

#### A. Applicable Principles

■ In general, any regulation of communication based in whole or part upon the content of that communication is invalid under the First Amendment. *See Consolidated Edison Co. v. Public Service Comm'n*, 447 U.S. 530, 537, 100 S.Ct. 2326, 2333, 65 L.Ed.2d 319 (1980). One exception to this rule is the zoning of businesses distributing sexually explicit materials.[3]

**3.** Another exception to the rule against regulation based on content involves obscene materials, which lack the protection of the First Amendment. *See Roth v. United States*, 354

U.S. 476, 485, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498 (1957). This exception is not relevant in this case, as neither party contends that the

In *Young v. American Mini Theatres,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), the Supreme Court ruled that the city of Detroit could legitimately zone "adult" movie theaters differently from other movie theaters, a distinction that rests on the content of the films displayed. The "anti-skid row" zoning ordinance upheld in *Young* was held to be justified by the city's interest in preserving the character of its neighborhoods. The Court noted that there was a factual basis for the city's determination that a concentration of adult entertainment uses would downgrade the city's neighborhoods. *Id.* at 71, 96 S.Ct. at 2452. Four Justices reasoned that the content-based regulation was justifiable because sexually explicit materials are entitled to a lesser degree of First Amendment protection than other kinds of expression. *Id.* at 70, 96 S.Ct. at 2452. A fifth Justice concluded that the ordinance in question was narrowly tailored to further a legitimate government purpose and thus satisfied the general requirements for regulations that incidentally effect speech. *Id.* at 79–82, 96 S.Ct. at 2456–2458 (Powell, J., concurring) (citing *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968)).

In *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981), the Court clarified the degree of protection afforded non-obscene, sexually explicit materials. The Court overturned a zoning ordinance, which was aimed at nude dancing, that prohibited all live entertainment in commercial establishments in the community. The Court held that the ordinance was too broad in its coverage; that the municipality had failed to establish any factual basis for its imposition of a zoning (ie. land-use planning) restriction on live

entertainment in general or nude dancing in particular; and that that ordinance was defective because it totally suppressed nude dancing. The decision in *Schad* underlined the fact that the Detroit anti-skid row ordinance upheld in *Young* did not "impose a limit on the total number of adult theaters which may operate in the city...." *Young,* 427 U.S. at 62, 96 S.Ct. at 2448; *see Schad,* 452 U.S. at 71, 101 S.Ct. at 2184.

Under *Young* and *Schad,* a zoning ordinance which regulates speech is subject to strict constitutional scrutiny: "[W]hen a zoning law infringes upon a protected liberty, it must be narrowly drawn and must further a sufficiently substantial government interest." *Schad,* 452 U.S. at 68, 101 S.Ct. at 2182. While neighborhood preservation is a sufficiently substantial government interest to justify regulation of "adult" businesses on the basis of speech content,[4] any such regulation must be supported by appropriate factual findings and must be narrowly drawn.

## B. Validity Of the Challenged Ordinance

Relying on *Schad* and a number of subsequent decisions by lower federal courts, plaintiff contends that South San Francisco's "Adult Entertainment Ordinance" unduly restricts the possible locations of adult entertainment businesses and thus is unconstitutional.[5] Plaintiff points to the relatively small geographic area of the city of South San Francisco, the limitation of adult entertainment businesses to areas zoned C-3, and the distance requirements of the ordinance. The combination of these three factors, plaintiff claims, greatly limits the possible locations of adult entertainment

"adult" closed-circuit television programs at the E.B. Motel are obscene.

**4.** *But cf. Young,* 427 U.S. at 71, n. 34, 96 S.Ct. at 2453, n. 34 (noting that municipality's interest in protecting citizens from speech that is "offensive" to them cannot justify regulation of protected speech) (citing *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975)).

**5.** Like many other such ordinances, the Ordinance in the case at bar is modeled on the Detroit ordinance upheld in *Young. See generally Note, Developments in the Law—Zoning,* 91 HARV.L.REV. 1427, 1557 (1978). However, "merely mimicking the ordinance upheld in *American Mini Theaters* is not enough." *Basiardanes v. City of Galveston,* 682 F.2d 1203, 1213 (5th Cir.1982).

businesses and improperly burdens access to adult materials.[6] Both parties dedicate a considerable portion of their briefs to establishing or refuting the restrictive effects of the zoning ordinance.

■ However, the Court need not determine whether the Ordinance as a whole improperly burdens Free Speech. There are narrower grounds for decision. The provisions of the Ordinance relating to "adult motels" are unsupported by any factual finding that such motels—as defined in Chapter 20.38—contribute to the deterioration of neighborhoods.[7] Moreover, it is doubtful in the extreme that any justification could be found for a distinction in zoning between an establishment such as the E.B. Motel and a motel that does not feature closed-circuit "adult" television programming. In this respect the South San Francisco Adult Entertainment Ordinance sweeps too broadly and impermissibly regulates speech protected by the First Amendment.

Defendants concede that "extensive studies were not conducted by the South San Francisco City Council prior to the enactment of Chapter 20.38." But they contend that the entire ordinance is adequately supported by generalized findings regarding the impact of adult entertainment uses on neighborhood deterioration.

In part, defendants claim to have relied on a publication of the Planning Advisory Service of the American Society of Planning Officials, Report No. 327, "Regulating Sex Businesses" by William Toner. This document, however, appears to be little more than a "how to" guide for cities considering enactment of zoning legislation to regulate adult entertainment. It does not include any studies or abstracts of studies dealing with the deleterious impact of adult entertainment businesses on their surrounding neighborhoods. Nor is there any mention whatever of the type of motel involved in this case.

Defendants also point to the Public Hearing and City Council meeting held on January 20, 1982, at which Chapter 20.38 was considered and enacted. The transcripts of that meeting show that the Chief of Police of the city of South San Francisco, a concerned citizen, and several local merchants spoke in generalities about the undesirability of "adult" entertainment businesses. Although the city's Director of Community Development stated that the E.B. Motel would be a non-conforming use under Chapter 20.38, there was no discussion of any land-use problem associated with that or any other motel.

Finally, defendants claim they are entitled to rely on the findings of fact of other legislative bodies in enacting legislation. They cite *Genusa v. City of Peoria*, 619 F.2d 1203, 1211 (7th Cir.1980):

A legislative body is entitled to rely on the experience and findings of other legislative bodies as a basis for action. There is no reason to believe that the effect of congregated adult uses in Peoria is likely to be different than the effect of such congregations in Detroit.

---

6. A number of federal decisions have struck down ordinances modeled on the Detroit ordinance where the circumstances indicated that these ordinances would suppress altogether or greatly reduce access to activities protected by the First Amendment. *See, e.g., Basiardanes, supra; Avalon Cinema Corp. v. Thompson,* 667 F.2d 659 (8th Cir.1981); *Keego Harbor Co. v. City of Keego Harbor,* 657 F.2d 94 (6th Cir.1981); *Alexander v. City of Minneapolis,* 531 F.Supp. 1162 (D.Minn.1982), *aff'd,* 698 F.2d 936 (8th Cir.1983); *CLR Corp. v. Henline,* 520 F.Supp. 760 (W.D.Mich.1981), *aff'd,* 702 F.2d 637 (6th Cir.1983); *Purple Onion, Inc. v. Jackson,* 511 F.Supp. 1207 (N.D.Georgia 1981); *Bayside Enterprises v. Carson,* 450 F.Supp. 696 (M.D.Fla.

1978); *E & B Enterprises v. City of University Park,* 449 F.Supp. 695 (N.D.Tex.1977).

7. A further possible infirmity in the South San Francisco Ordinance, as applied to plaintiff, is the absence of any kind of "grandfather" clause to protect existing uses. As a general rule, zoning ordinances are prospective in their application. Plaintiff has offered the adult television channel since it acquired the E.B. Motel in 1978. Chapter 20.38 was enacted in 1982. The Court need not decide whether the failure to "grandfather in" this pre-existing use makes the ordinance unconstitutionally restrictive, in light of its conclusion that the statute is overbroad. *See generally Purple Onion, Inc. v. Jackson,* 511 F.Supp. 1207, 1224 (N.D.Ga.1981).

Whatever validity defendants' argument may have with regard to Chapter 20.38 as a whole, the argument cannot support the inclusion of "adult motel", as defined, in that Ordinance. Defendants have not pointed to a single instance in which a municipality has made a finding of fact—or other reference—having to do with such an establishment.[8]

■ In short, the city has failed to offer any justification for including "adult motel" among the "adult entertainment businesses" it seeks to regulate. Regardless of whether the "adult" programs available on one channel of E.B. Motel's televisions are entitled to the same degree of protection as other speech, the city may not constitutionally regulate such speech without some finding that its Ordinance will serve its purported purposes. This Court cannot sustain the constitutionality of a land-use planning ordinance which indisputably trenches on protected First Amendment liberties and yet is unsupported by any factual finding whatever.

■ Moreover, it is extremely doubtful that a justification could be provided for a definition of "adult entertainment businesses" that included an establishment such as the E.B. Motel. That "adult" programming is available within the private rooms of the motel does not, without more, distinguish the E.B. Motel from any other motel for zoning purposes.[9] There simply is no rational relationship between legal activities that take place entirely within the walls of a motel and a city's interest in land-use planning.

## ORDER

The parties having stipulated that, pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, the Court should consolidate the hearing for preliminary injunction with trial on the merits,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

(1) Those portions of the City of South San Francisco Municipal Code Chapter 20.38 which purport to regulate the location, existence and conduct of an "adult motel" are unconstitutional on their face and as applied to plaintiff.

(2) Defendants and each of them, their agents, employees, representatives and all persons acting by, through or in concert with them or under their supervision, direction or control, are permanently enjoined from doing or permitting to be done directly or indirectly, any of the following acts:

(a) Prohibiting plaintiff from operating a motel at 1201 Airport Boulevard in the City of South San Francisco;

(b) Enforcing the provisions of South San Francisco City Municipal Code Chapter 20.38 to prevent plaintiff from offering adult videotapes or television transmissions to motel guests in their private rooms at 1201 Airport Boulevard in the City of South San Francisco.

---

8. Indeed, this appears to be a case of first impression.

9. Although it is not supported by affidavit or other proper evidence, plaintiff's argument is well-taken that the E.B. Motel's practice of transmitting adult television programming is shared by a number of the nation's finest hotels (none of which could reasonably be deemed to blight or downgrade their surrounding neighborhoods). Plaintiff writes:

> The Hyatt on Union Square, San Francisco, the Sainte Claire Hilton, San Jose, the Vista International Hotel, New York City, the Hyatt Regency, Hilton Head, South Carolina, and the E.B. Motel, South San Francisco, have several things in common:
>
> \*　\*　\*　\*　\*　\*

4. They provide patrons with one channel of "closed circuit television transmissions ... which are characterized by an emphasis upon the depiction or description of 'specified sexual activities' or 'specified anatomical areas'";

. . . .

Whether or not plaintiff is correct in its description of these hotels, a federal court has found that "some of Atlanta's finest hotels" provide such adult programming. *Purple Onion, Inc. v. Jackson,* 511 F.Supp. 1207, 1220 (N.D.Ga. 1981) (striking down ordinance which would have included those Atlanta hotels as "adult theaters"). Indeed, unlike the Atlanta hotels described in *Purple Onion,* the E.B. Motel does not charge its patrons a special fee to view adult programming.

(3) No person who has notice of this injunction shall fail to comply with its letter and spirit nor shall any person subvert its letter and spirit by any sham, indirection, or other artifice.