[Civ. No. 48574. Second Dist., Div. One. Nov. 30, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES MITCHELL et al., Defendants and Appellants.

## COUNSEL

Joseph Rhine for Defendants and Appellants.

Burt Pines, City Attorney, George Eskin, Chief Assistant City Attorney, Madeleine I. Flier, Assistant City Attorney, Richard M. Helgeson, Deputy City Attorney, John Van de Kamp, District Attorney, Richard P. Kalustian, Otis L. Hubbard and Dirk Hudson, Deputy District Attorneys, for Plaintiff and Respondent.

## OPINION

**THOMPSON, J.**—This appeal, while broadly framed, primarily presents the narrow issue of the power of a trial court acting on a petition filed under the Red Light Abatement Law to grant relief by preliminary injunction, effectively closing the property claimed to be a nuisance. Concluding that the relief is appropriate only in a judgment on the merits and not by provisional remedy, we reverse the order granting a preliminary injunction.

Four Star Theatre is a theatre and related property located on Wilshire Boulevard in Los Angeles. The property is leased by its owners to United Artists Theatres of California, Inc., and subleased by United Artists to James and Artie Mitchell and corporations controlled by them. The sublease calls for rent of $48,000 per year, runs to August 30, 1977, is for the purpose of conducting a theatre, covers furniture, fixtures and equipment, and vests the right of possession in the sublessee.

The Mitchell group operates the theatre, catering to devotees of "X-rated" films. During the calendar year 1974, officers of the Los Angeles Police Department observed over 30 acts of public masturbation by patrons of the theatre. Employees of the Mitchell group were instructed to cause a warning of the presence of officers in the theatre to be flashed on the screen whenever their presence was known. While ushers sometimes patrolled the aisles, the patrol was sporadic at best except when police officers were known to be present.

The City Attorney of Los Angeles and the district attorney of the county filed an action under the Red Light Abatement Law (Pen. Code,

§§ 11225-11235) to abate the operation of the theatre as a statutory nuisance. The action names the lessors, United Artists, and the Mitchell group as defendants. Accepting declarations filed by the plaintiffs establishing the facts we have recited in this opinion and rejecting defendants' declarations to the effect that the Mitchell group had not encouraged or condoned the conduct of the patrons, the trial court issued a preliminary injunction on plaintiffs' motion.

The preliminary injunction enjoins each of the defendants named in the action from: "a. Allowing or permitting any person to enter the [theatre] premises . . . for any purpose except that [lessors, United Artists] and their agents . . . shall be permitted to enter, but only for such purposes as are required for the safety of the property, and for . . . negotiations for the lawful use of the property . . .; [and] b. Maintaining or operating, or allowing or permitting the maintenance or operation of the [theatre] premises . . . as a place of lewdness or assignation, and from permitting either directly or indirectly any acts of lewdness or assignation on the . . . premises."

By its terms, the preliminary injunction permits the lessors and United Artists "or their successors in interest" to move to modify or terminate the injunction on a showing that they have a plan for operation of the property not involving the maintenance of a nuisance.

On this appeal from the order granting the preliminary injunction, the Mitchell group, but not the other defendants, contends: (1) the Red Light Abatement Law is not applicable to a motion picture theatre; (2) the commission of lewd acts by the theatre's patrons does not bring the property within the Red Light Abatement Law; and (3) the statutory scheme does not permit the theatre to be closed by preliminary injunction as opposed to an injunction granted in the form of a judgment. Only the last contention has merit.

*Applicability of Red Light Abatement Law.* Penal Code section 11225 provides in part: "Every building or place used for the purpose of . . . lewdness, assignation, or prostitution, and every building or place in or upon which acts of . . . lewdness, assignation, or prostitution, are held or occur, is a nuisance which shall be enjoined, abated and prevented, whether it is a public or private nuisance."

"Lewdness" as used in the statute encompasses a much broader scope of conduct than prostitution and assignation. (*People* v. *Bayside*

*Land Co.* (1920) 48 Cal.App. 257, 260-261 [191 P. 994]; *People* ex rel. *Hicks* v. *Sarong Gals* (1972) 27 Cal.App.3d 46, 50 [103 Cal.Rptr. 414].) Public masturbation is lewd conduct. ■ The occurrence of repeated instances of public masturbation, encouraged by the management of property by the flashing of warnings when police are known to be present, supports the inference that the property is used for a lewd purpose. Thus, the record here supports the trial court's determination that the theatre property is of a type described in Penal Code section 11225. *Tarbox* v. *Board of Supervisors* (1958) 163 Cal.App.2d 373 [329 P.2d 553], upon which the Mitchell group relies for a contrary result, is inapposite. *Tarbox* holds only that theatre management is not responsible for lewd conduct of its patrons where it takes reasonable steps to prevent the conduct. (163 Cal.App.2d at p. 378.)

The Mitchell group contends also that a motion picture theatre is exempt from the operation of the Red Light Abatement Law. True, the act is inapplicable to conduct which involves the theatrical exhibition of obscene motion pictures. (*People* ex rel. *Busch* v. *Projection Room Theatre* (1976) 17 Cal.3d 42, 62 [130 Cal.Rptr. 328, 550 P.2d 600].) Here, however, the conduct which satisfies the statute is not the exhibition of motion pictures but rather the acts of the theatre patrons condoned and encouraged by the theatre management.

*Scope of injunctive relief.* The nature of injunctive relief granted by the trial court is another matter. While Penal Code section 11230 empowers the court, which finds property to be subject to the Red Light Abatement Law, to order in its judgment that the property be closed for a period up to one year, Penal Code section 11227 empowers the court to grant provisional relief only "to abate and prevent the continuance or recurrence of such nuisance." ■ In view of the contrasting language of sections 11227 and 11230, the former must be construed as not permitting closure as a provisional remedy unless closure is necessary to prevent the continuing or recurring statutory nuisance.

Considered in the context of the leasehold interest of the Mitchell group, the preliminary injunction issued in the case at bench has the effect of closing the theatre. The record does not establish that closure is necessary to prevent continuation or recurrence of the lewd acts of the theatre patrons. There is no indication that subsection "b" of the preliminary injunction which restrains use of the property in a fashion which permits lewd acts to occur will be ineffective. Thus, while

subsection "b" of the injunction is authorized by section 11227, subsection "a" exceeds the power vested in the court by the statute. The portion of the preliminary injunction which prohibits access to the theatre except to the lessors and United Artists, and then under very limited circumstances, is therefore erroneous.

Plaintiff seeks to save the order by noting that United Artists and the lessors may move to terminate the injunction by showing that they have developed a plan for the use of the property that will not involve the maintenance of a nuisance. The choice given by the order, however, ignores the leasehold estate of the Mitchell group. The sublease vests the possessory interest in that group. In these circumstances, the preliminary injunction is overly broad.

The order granting preliminary injunction is reversed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied December 23, 1976, and respondent's petition for a hearing by the Supreme Court was denied February 17, 1977.