[Civ. Nos. 40390, 40391. First Dist., Div. One. Apr. 22, 1977.]

PHILIP D. SKINNER et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

## Counsel

Donald A. Tenebaum and Allen Ruby for Petitioners.

No appearance for Respondent.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart, Thomas A. Brady and Alvin J. Knudson, Deputy Attorneys General, for Real Party in Interest.

## Opinion

ELKINGTON, J.—The People of the State of California, represented by the Santa Clara County District Attorney, commenced two actions against petitioners Philip D. Skinner and James B. Hunt. Each action concerned a separate parcel of improved real property. Their stated purposes were "to enjoin, abate and prevent a nuisance as defined in Chapter 3, Article 2, beginning with Section 11225 of the California Penal Code and commonly referred to as the Red Light Abatement Law, and to protect the public from unlawful, unfair and fraudulent business practices [Civ. Code, §§ 3369, subd. 5, 3370.1] and unfair, deceptive, untrue and misleading advertising [Bus. & Prof. Code, §§ 17535, 17536]."

A nuisance, as defined by Penal Code section 11225, is a "building or place used for the purpose of . . . lewdness, assignation, or prostitution, and . . . in or upon which acts of . . . lewdness, assignation, or prostitution, are held or occur, . . ." With the complaint the People filed

affidavits from which it appeared that each of the two premises which were the subjects of the action was such a "building or place."

Under the purported authority of Penal Code section 11227[1] and Code of Civil Procedure section 527,[2] and without notice to petitioners or other of the named defendants and without adversary hearings thereon, the superior court issued identical temporary restraining orders requiring that, pending hearing on an order to show cause, "the defendants and all persons acting on their behalf, or acting in concert or participating with them or at their direction or control are restrained from" operating any premises where certain designated criminal activity was carried on. No error or other fault is charged in relation to that portion of the temporary restraining orders.

It is the remainder of the temporary restraining orders which is here under attack; it provides:

"IT IS FURTHER ORDERED that, the Palo Alto Police Department:

"a. Take immediate possession and custody of the premises described in Exhibit B attached to the complaint in this matter and all personalty located thereat.

"b. Remove forthwith and store all personalty from the described premises.

"c. Shall cause all power and utilities serving the described premises to be disconnected.

"d. Shall take whatever steps reasonably necessary to allow no person to enter the described premises without the consent of the Palo Alto Police Department or attorney for plaintiff.

---

[1] Penal Code section 11227 provides: "Whenever the existence of a nuisance is shown in an action brought under this article to the satisfaction of the court or judge thereof, either by verified complaint or affidavit, the court or judge shall allow *a temporary writ of injunction* to abate and prevent the continuance or recurrence of such nuisance." (Italics added.)

[2] Code of Civil Procedure section 527, as relevant to the issues before us. states: "No preliminary injunction shall be granted without notice to the opposite party; nor shall any *temporary restraining order* be granted without notice to the opposite party. unless it shall appear from facts shown by affidavit or by the verified complaint that great or irreparable injury would result to the applicant before the matter can be heard on notice." (Italics added.)

"e. Shall take into immediate custody and bring before the court, as soon as practicable, any person found within the premises without the consent of Palo Alto Police Department or the attorney for plaintiff, after the premises are within the custody and possession of the Palo Alto Police Department pursuant hereto."

Hereafter, our reference to "temporary restraining orders" will relate only to the above lettered portion of the subject orders.

Following issuance of the temporary restraining orders and according to petitioners' substantially uncontroverted allegations,[3] the following occurred:

"On the morning of December 3, 1976, still without notice to any party, the Palo Alto Police Department broke into the theater operated by petitioners. Thereafter the police changed the locks on the doors and removed all personal property from the building. The police removed even the light fixtures which were affixed to the premises, as well as tearing out the theater seats which face the stage and movie screen and ripping out the aforementioned screen. Additionally, the police tore down interior partition walls. They further used a blow torch to break into the office safe to remove cash and personal effects found therein. The police also seized all motion picture films and three (3) motion picture projectors from the premises. Despite repeated demands, the police have furnished no receipt for any of the property taken from the theater, including the cash and personal effects. Petitioners at this time do not know where any of their property is. The theater has been sealed and posted with notices that no one may enter without the consent of the Palo Alto Police Department or the Office of the District Attorney."

On December 8, 1976, a motion of petitioners to dissolve the temporary restraining orders was denied by the superior court. Thereafter, upon notice and hearing, the court issued preliminary injunctions which, we are advised, among other things "continues the restraint imposed in the temporary restraining order[s] and orders a closure of the premises . . . ." We issued alternative writs of prohibition in order to determine the legality of the several orders.

---

[3]The People appear to controvert only petitioners' insistence that the premises were "theaters." They contend instead that the premises were primarily places of "lewdness, assignation·and prostitution" where among other offerings a customer might observe a motion picture or dancing.

The issue is posed by the Attorney General in this manner: "Respondent court had jurisdiction to grant a temporary restraining order against petitioners, and has jurisdiction to issue the preliminary injunction requested by the People."

Our first inquiry is whether the demands of *procedural due process* were met in the granting of the temporary restraining orders.

It bears emphasis that without affording notice or hearing to petitioners the orders, among other things, commanded the police department to forthwith take custody of the premises, to remove all persons therefrom, and to seize, remove and store all personal property found therein.

■ It is settled law that "an individual must be afforded notice and an opportunity for a hearing before he is deprived of any significant property interest, and that exceptions to this principle can only be justified in 'extraordinary circumstances.'" (*Randone v. Appellate Department*, 5 Cal.3d 536, 541 [96 Cal.Rptr. 709, 488 P.2d 13].) This principle has its roots in the demands of "procedural due process as guaranteed by article I, section 13 of the California Constitution and the Fifth and Fourteenth Amendments of the United States Constitution." (*Id.,* p. 541.) "For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.'" (*Fuentes v. Shevin,* 407 U.S. 67, 80 [32 L.Ed.2d 556, 569-570, 92 S.Ct. 1983].) This constitutional command is manifestly applicable to the several bases of the People's actions: the Red Light Abatement Law (Pen. Code, §§ 11225-11235), Civil Code sections 3369, subdivision 5, 3370.1, and Business and Professions Code sections 17535, 17536. And we do not observe in the instant case and from the present record *Randone v. Appellate Department*'s exception of "extraordinary circumstances" justifying, without notice and hearing, the superior court's broad temporary restraining orders.

We accordingly conclude that the portion of the temporary restraining orders at issue, and the action of the police pursuant thereto, denied petitioners the constitutionally guaranteed due process of law.

■ For yet another reason we find the temporary restraining orders to be violative of constitutional proscriptions. Among other things and as previously noted, they called for immediate seizure of the premises from

their occupants, and for the seizure, removal and police custody of all personal property and the arrest of all persons found therein. They had all the attributes of the roundly condemned "general warrant" (see *People* v. *Berger*, 44 Cal.2d 459, 461 [282 P.2d 509]), the use of which was probably principally responsible for the Fourth Amendment's requirement that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing* the place to be searched, and *the persons or things to be seized*" (italics added). ■ Patently, no statute regardless of its purpose, or entitlement, may authorize a police search or seizure in contravention of the Fourth Amendment.

■ Further, we are of the opinion that it does not reasonably appear "that great or irreparable injury would result to the applicant before the matter [could] be heard on notice." (See Code Civ. Proc., § 527, fn. 2, *ante.*)

Petitioners, relying upon *People* v. *Feraud,* 45 Cal.App. 765, 768 [188 P. 843], argue that, even upon notice and hearing, a restraining order or injunction may never issue *prior to trial and judgment* in a Red Light Abatement Law action. *People* v. *Feraud* does state that "the drastic features of the act attach only after trial and judgment." But a closer reading discloses a meaning that, at least ordinarily, there may be no preliminary or temporary restraint in such a case "upon an *ex parte* application based solely upon [a] verified complaint or affidavit, . . ." The court's meaning is made clear by its explanatory comment: "For instance, as we have already seen, a private citizen, in a verified complaint or affidavit, may charge any establishment, however reputable, with being a nuisance within the meaning of the Redlight Abatement Act, and, if the law were as contended for by respondent, such person, upon an *ex parte* application based solely upon said verified complaint or affidavit, would be entitled to an order closing said establishment until trial; . . ." Nowhere does the court indicate that under the Red Light Abatement Law, upon notice and hearing and in obedience to apposite constitutional restraint, a temporary restraining order may not issue in the manner permitted by Code of Civil Procedure section 527.

We note that without reference to *People* v. *Feraud, supra,* the court in *People* v. *Mitchell,* 64 Cal.App.3d 336, 340 [134 Cal.Rptr. 358], has construed Penal Code section 11227's permitted "provisional relief" as not permitting closure "as a provisional remedy unless closure is

necessary to prevent the continuing or recurring statutory [i.e., Red Light Abatement Law's] nuisance."

We need not, and do not, consider other points raised by petitioners in their attack on the temporary restraining orders, except to say that we are unpersuaded and uninfluenced by their contention that for the purposes of the Red Light Abatement Law, the privilege granted a customer, for a fee, of viewing a dance or motion picture (as established by the People's affidavits and presumably found true by the court), necessarily changes the character of a house of prostitution to that of a theater, thus insuring the criminal operation full First Amendment protection, including immunity from "prior restraint" of conduct presumptively within that protection. (Cf. *People* ex rel. *Busch* v. *Projection Room Theater,* 17 Cal.3d 42 [130 Cal.Rptr. 328, 550 P.2d 600].)

The superior court will set aside the temporary restraining orders, and will cause the return to petitioners of such property as was unlawfully seized thereunder. It will also set aside such portions of the preliminary injunctions as purport to continue the temporary restraining orders in effect. The peremptory writ will issue accordingly.

Sims, Acting P. J., and Lazarus, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.