[Civ. Nos. 18053, 18054. Third Dist. July 21, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
ADULT WORLD BOOKSTORE et al., Defendants and Appellants.

COUNSEL

Hecht, Diamond & Greenfield, Roger Jon Diamond and Ronald Castro for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Eddie T. Keller and W. Scott Thorpe, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**PARAS, Acting P. J.**—Defendants (the Adult World Bookstore, Reliable Enterprises, Inc. and Ralph William Albrecht) in these consolidated appeals operate bookstores at two locations in Sacramento County. From January through July 1978, investigators from the vice

unit of the Sacramento County Sheriff's Department and the Sacramento City Police Department repeatedly visited the bookstores and observed the behavior of persons in some 39 motion picture booths located therein. In the booths, films depicting homosexual activities are shown by means of coin-operated projection systems. Each booth is continually supplied by defendants with kleenex tissues and a wastepaper basket.

On July 25, 1978, the Sacramento County District Attorney filed complaints for injunction and nuisance abatement under the Red Light Abatement Law. (Pen. Code, § 11225 et seq.)[1] Attached to each complaint are declarations by the vice officers reporting instances of masturbation and oral copulation observed by them through openings (glory holes), in the partitions between certain of the booths. The officers further reported invitations to them from male patrons (the evidence does not suggest the presence at any time of female patrons), to share booths for the purpose of engaging in homosexual activities, verbal and nonverbal invitations for the performance of sexual acts through the partition openings, a bulletin board near the entrances to the booths upon which were pinned 3" x 5" cards containing written solicitations by individuals for sexual acts including one advertisement for sexual services to be performed outside the store, an instance of an employee of defendants warning patrons within the store of the potential presence of a police officer, and an instance of posted instructions on the outer side of a door of one booth pertaining to the proper signal for a specific form of sexual activity.

The superior court issued show cause orders and temporary restraining orders abating the allowance of lewd behavior in both locations. After review of declarations and oral argument, it issued preliminary injunctions on August 11, 1978. Defendants were enjoined from allowing acts of lewdness or assignation on the premises and from removing any furniture or equipment therefrom. They were also ordered to post conspicuous signs (1) prohibiting more than one person in a booth at a

---

[1]Section 11225 provides: "Every building or place used for the purpose of illegal gambling as defined by state law or local ordinance, lewdness, assignation, or prostitution, and every building or place in or upon which acts of illegal gambling as defined by state law or local ordinance, lewdness, assignation, or prostitution, are held or occur, is a nuisance which shall be enjoined, abated and prevented, whether it is a public or private nuisance. [¶] Nothing in this section shall be construed to apply the definition of a nuisance to a private residence where illegal gambling is conducted on an intermittent basis and without the purpose of producing profit for the owner or occupier of the premises."

time, (2) prohibiting loitering in the film arcade area, and (3) containing the information that masturbation is a lewd act, that lewdness, assignation and prostitution are prohibited on the premises, and that a violation of any prohibition may result in criminal prosecution under Penal Code sections 647, subdivision (a) (lewd or dissolute conduct), or 314, subdivision 1 (indecent exposure). Defendants were ordered to close all openings in the partitions, to provide employee patrols, to prohibit warnings of police presence, to remove tissue boxes and wastepaper baskets from the booths, to provide higher levels of lighting in the hallway outside the booths, to modify the booth doors (upon which the films are projected) by replacing them with pulldown screens or "dutch door" type closings with openings for inspection, and to remove inside locks.

Defendants' appeal is premised upon recent California Supreme Court decisions defining lewd conduct (*Pryor* v. *Municipal Court* (1979) 25 Cal.3d 238 [158 Cal.Rptr. 330, 599 P.2d 636]; *In re Anders* (1979) 25 Cal.3d 414 [158 Cal.Rptr. 661, 599 P.2d 1364]), and on the contention that compliance with the order to modify the booth doors amounts to a prior restraint on their freedom of speech and a violation of abatement statute procedures because it will force closure of the stores. The contentions are without merit.

## I

Initially we consider the standard of review of a preliminary injunction as distinguished from a final judgment granting injunctive relief. The preliminary injunction is a result of balancing the equities of the respective parties and concluding therefrom that pending an ultimate full trial on the merits, certain conduct should be regulated or prohibited. It represents the trial court's conclusion that greater injury will result to the plaintiff (in this case the public) if a preliminary injunction is denied than to the defendant if it is granted. (*Socialist Workers etc. Committee* v. *Brown* (1975) 53 Cal.App.3d 879, 887-888 [125 Cal.Rptr. 915].) ■ The grant or denial of a preliminary injunction will be reversed on appeal only if there is demonstrated a clear abuse of discretion. (*Ibid.*) ■ The reviewing court should interpret the facts most favorably to the prevailing party and draw such reasonable inferences and indulge in such intendments as will support the trial court's ruling (*MCA Records, Inc.* v. *Newton-John* (1979) 90 Cal.App.3d 18, 21 [153 Cal.Rptr. 153].)

## II

The Red Light Abatement Law creates a statutory nuisance per se. (See 7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 99, p. 5321.) Although it is a civil action, it is penal when contrasted with nuisance actions brought under the Civil Code (*Board of Supervisors* v. *Simpson* (1951) 36 Cal.2d 671, 674 [227 P.2d 14]), as it is a forfeiture proceeding based on illegal activity. (See 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 18, p. 896.) A temporary injunction to abate may issue upon a showing of the existence of a nuisance to the satisfaction of the court (Pen. Code, § 11227), but a building may not be closed thereby unless there is no other way to prevent recurrence or continuance of the nuisance. (*People* v. *Mitchell* (1976) 64 Cal.App.3d 336 [134 Cal.Rptr. 358].) After trial, the injunction against the nuisance may become permanent and the building may be closed for a period of up to one year, during which time fixtures and movable property used in the business may be sold by an officer of the court. (Pen. Code, § 11230.)

The basis of the abatement action here is that defendants are using the bookstore premises for purposes of assignation and lewd conduct. Before the *Pryor* decision, Penal Code section 647, subdivision (a) (lewd and dissolute conduct),[2] was construed to prohibit conduct "[which] might be described as 'lustful,' 'loose in morals,' 'disgusting,' or by other epithetical adjectives." (*Pryor, supra,* 25 Cal.3d at p. 251, fn. omitted.) The Supreme Court rejected such definitions as constitutionally infirm, but preserved the viability of the statute by adopting a more limited and specific construction. "[W]e construe that section to prohibit only the solicitation or commission of conduct in a public place or one open to the public or exposed to public view, which involves the touching of the genitals, buttocks, or female breast, for purposes of sexual arousal, gratification, annoyance or offense, *by a person who knows or should know of the presence of persons who may be offended by the conduct.*" (25 Cal.3d at p. 244; italics added.) The new definition is retroactive (*id.,* at p. 258). The *Anders* decision makes it clear that knowledge of possible offense to third persons is a question of fact and cannot be answered solely by reference to the location in which the conduct occurred. (*Anders, supra,* 25 Cal.3d at p. 417—petitioner there

---

[2]That section reads: "Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor:

"(a) Who solicits anyone to engage in or who engages in lewd or dissolute conduct in any public place or in any place open to the public or exposed to public view."

was apprehended masturbating in a closed pay toilet stall in a bus station by a police officer who looked through an upper wire mesh grate in the solid door.) Defendants here claim that there is no evidence that anyone was or could be offended by the happenings within the bookstores, which happenings did not "involve or affect innocent third parties."

Defendants' reliance upon *Pryor* and *Anders* is misplaced. Those cases defined "lewdness," and for purposes of this decision we accept that definition as applicable to the conduct taking place within the bookstores. We find ample evidence to support the trial court's implied finding of knowledge "of the presence of persons who may be offended" as well as that the conduct occurred in a "place open to the public." (*Pryor supra*, 25 Cal.3d at p. 257.) Not everyone who enters a dirty bookstore[3] (euphemistically adjectived "adult"), expects to be molested, propositioned, or subjected to an open view of live homosexual acts of others. Indeed, in entering such a store, a member of the public exercises his or her own right of privacy and the First Amendment right to see, read, and observe on film sexually explicit, even sordid, activities. This is what the store purports to offer. To attribute to each incoming customer the concurrent expectation inter alia that he or she will be solicited to perform sexual acts through the "glory hole" of an adjoining motion picture booth would have a chilling effect upon such fundamental rights. It follows that those who perform sexual acts within view of neutral customers of the stores, or who expose themselves to them or solicit them to perform or participate in sexual activity, undeniably do so in a place open to the public and with the reasonable expectation that the customers (at least certain of them) are likely to be offended.[4]

Thus we find ample support for the trial judge's effort both to apply reasonably the Red Light Abatement Law and to protect the constitutional right of the public to patronize dirty bookstores, free from offensive conduct of strangers. The argument that since no innocent third parties complained, the activities in the bookstores were not lewd and cannot be enjoined is rejected. Complaints by private citizens are not and have never been necessary to the public's remedy under the Red Light Abatement Law, nor to the definition of lewdness enunciated in *Pryor*.

---

[3]The bookstores in question here were open to the public. The only external signs indicated the name "Adult World Book-Store," that "adult" books, magazines, films, and "things" were available within, and that minors were not allowed entry.

[4]It might be otherwise if the public was alerted upon entry to such possibilities; such is of course not the case.

## III

■ Defendants assert that the preliminary injunction is overly broad and essentially prevents them from exercising their constitutional right to show films, that "the effect of the preliminary injunction is to require the premises to be closed." We do not agree. No showing has been made that the trial court's action was beyond the precepts hereinabove recited or that it otherwise abused its discretion. Under the preliminary injunction the defendants may continue to exercise their First Amendment rights, and the conditions imposed are not unreasonable as a matter of law so as to constitute an abuse of discretion. (See *EWAP, Inc.* v. *City of Los Angeles* (1979) 97 Cal.App.3d 179 [158 Cal.Rptr. 579]; *People* v. *Perrine* (1975) 47 Cal.App.3d 252 [120 Cal.Rptr. 640]; *People* v. *Mitchell* (1976) 64 Cal.App.3d 336 [134 Cal.Rptr. 358].) As stated by plaintiff, "it is important to point out...what is *not* the issue in the case at bar. Neither the trial court nor this Court is faced with a case where the district attorney is attempting to either censor the type of films exhibited or prohibit the exhibition of certain films. It is the conduct of the patrons that is offensive and which will hopefully be affected by the injunction.... [¶] Rather the sole issue before this Court is whether the trial court abused its discretion in (a) concluding that a preliminary showing had been made that lewd acts were occurring at both bookstores and (b) ordering certain actions in the form of more lighting, various warning signs, limiting the number of people in a booth, permanently closing 'glory holes,' instituting employee patrols, and replacing the doors with pull down screen or 'dutch doors' in order to deter future lewd acts pending determination of the abatement action. Appellants are not required to close their businesses nor is the context of the materials they exhibit limited in any way." (Italics in original.)

The preliminary injunction is affirmed.

Evans, J., and Lally, J.,* concurred.

A petition for a rehearing was denied August 15, 1980, and the opinion was modified to read as printed above. Appellants' petition for a hearing by the Supreme Court was denied September 17, 1980.

---

*Assigned by the Chairperson of the Judicial Council.