Opinion
FOSTER, Acting P. J.
Penal Code, section 647, subdivision (a) provides: “Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor: (a) Who solicits anyone to engage in or who engages in lewd or dissolute conduct in any public place or in any place open to the public or exposed to public view.” In Pryor v. Municipal Court (1979) 25 Cal.3d 238 [158 Cal.Rptr. 330, 599 P.2d 636], this subdivision was challenged on the ground that the term “lewd or dissolute conduct” is unconstitutionally vague. The Supreme Court *Supp. 5 agreed, but held: “If, however, we can reasonably construe the statute to conform with the mandate of specificity, we should not, and will not declare the enactment unconstitutional. Consequently, rejecting prior interpretations of this statute, we adopt a limited and specific construction consistent with the present function of section 647, subdivision (a), in the California penal statutes; we construe that section to prohibit only the solicitation or commission of conduct in a public place or one open to the public or exposed to public view, which involves the touching of the genitals, buttocks, or female breast, for purposes of sexual arousal, gratification, annoyance or offense, by a person who knows or should know of the presence of persons who may be offended by the conduct. As so construed, section 647, subdivision (a), complies with constitutional standards; we therefore deny defendant’s petition for writ of prohibition.” (25 Cal.3d at p. 244.)
Pryor, by judicial definition of its terms, thereby provided subdivision (a) with a constitutionally sufficient identification of the offense prohibited. As we construe Pryor, the offense[1] defined contains the following elements:
(1) Sexually motivated conduct by defendant involving “the touching of the genitals, buttocks or female breast ...” (p. 256);
(2) The conduct must be accompanied by a specific intent, i.e., “for ‘purposes of sexual arousal, gratification or affront’” (p. 256);
(3) The conduct must occur “in any public place, or any place open to the public or exposed to public view” (pp. 256-257);
(4) The conduct must occur in the presence of another person or persons “who may be offended . . . ” (p. 256); and
(5) Defendant must know “or should know of the presence of persons who may be offended by his conduct.” (P. 256.)
Since the Pryor decision, the Appellate Department of the Superior Court for Los Angeles County has been confronted with numerous appeals involving the interpretation of the elements set forth in Pryor in their application to specific factual circumstances. As these issues fre *Supp. 6 quently recur, we have consolidated for publication these two appeals, which involve many of these recurring issues.[2]
People v. Rylaarsdam—Crim. A. No. 18167
Sergeant Roger Kelley, a member of the Pasadena Police Department assigned to the vice-narcotics section, testified that on July 25, 1979, he went to an establishment in Pasadena described as a combination adult bookstore and location for viewing sexually explicit motion pictures. Dressed in civilian clothing, he was conducting an undercover investigation of vice conditions at that location. He had previously conducted 80 or 90 similar investigations there.
The interior of the store had a book section near the front and at the rear a series of booths for viewing motion pictures. Sergeant Kelley remained in the book section four or five minutes and observed near the rear of the store six or seven men, including defendant. Although he may have made eye contact with some of the men, he did not recall making eye contact with defendant.
Kelley then proceeded toward booth 19, observing before he entered that the door to booth 20 was closed. The booths are about three feet by three feet in dimension and contain an overhead motion picture projector which displays a picture on a screen attached to the inside of the door. The projector is activated by placing a coin in one of two coin boxes enabling the viewer to select between heterosexual and homosexual motion pictures.
When Kelley entered, he noticed a hole in the partition dividing booth 19 from booth 20, described as about three inches around and some two and one-half feet above the floor. Kelley sat down and placed a coin in one of the coin boxes.
After he had been in the booth a couple of minutes, his attention was attracted by someone placing a finger through the hole in the partition, “wiggling” it about, and withdrawing it. During investigations on prior occasions, he had observed similar conduct. Sometimes it would be fol *Supp. 7 lowed by further activity and sometimes not. On this occasion, some four or five seconds after the finger was withdrawn, he observed an erect penis protruding through the hole. He testified that this conduct was unexpected and that he was offended by it. He exited the booth, went to the adjoining one, and placed defendant under arrest.
Rylaarsdam testified that he is a homosexual and had gone to the bookstore to make contact with other male homosexuals. He described the store as a “cruising place,” well-known among male homosexuals for contacting other homosexuals, although he was aware that it was patronized by heterosexuals as well. When he entered, he observed Sergeant Kelley, who appeared attractive to him. He did not know whether Kelley was homosexual or heterosexual. He made eye contact with Kelley, but Kelley did not respond either positively or negatively.
Defendant then entered Booth 20, closed the door, and commenced viewing a homosexual motion picture. Glancing through the hole in the partition, he observed Kelley and believed he made eye contact with him. Rylaarsdam then placed his finger through the hole “to check out the response.” He believed the response was positive because the occupant of the other booth did not attempt to push his finger away, made no attempt to cover the hole, nor called him a “goddam son of a bitch” or a “fag,” which would be a negative response. He looked through the hole and again made eye contact with Kelley. He then exposed himself through the hole.
Rylaarsdam was convicted of one count of violating Penal Code, section 314 (indecent exposure) and one count of violating Penal Code, section 647, subdivision (a) (lewd and dissolute conduct). He appeals the judgment of conviction on both counts. On the appeal, he presents several contentions.
Defendant contends first that the evidence is insufficient to establish a touching of the genitals, as proscribed by section 647, subdivision (a), by himself or any other person. The trial judge, however, concluded that there was a touching by defendant of his penis in guiding it through the hole in the partition. The trial judge had before him photographs depicting the size and location of the hole and, although circumstantial, we cannot say that the evidence is insufficient to support this finding.
*Supp. 8 Defendant further argues, however, that such “incidental” touching does not meet the requirements of a specific intent, as enunciated in Pryor, of the purpose of sexual arousal, gratification or affront. A somewhat similar argument was made in People v. Conway (1979) 103 Cal.App.3d Supp. 7 [162 Cal.Rptr. 877]. There, defendant, a waitress in' a beer bar, displayed her genitals to customers in the course of a stage performance. On her appeal from a judgment of conviction of violating Penal Code, section 314, she contended that sexual motivation is a necessary element of the offense prohibited by section 314, but since her conduct in the course of the performance was not for her own sexual arousal but simply to obtain money, the conviction could not stand. Rejecting this contention, we pointed out that “. . . the statute need not be limited to arousal of the defendant alone but also reaches the specific intent to create sexual arousal in those persons observing the defendant.” (103 Cal.App.3d Supp. at p. 10.)
It is immaterial under section 647, subdivision (a) that the actor’s touching of his genitals in the view of another is not for the purpose of the actor’s sexual arousal or gratification. It is sufficient if the act is done for the purpose of the sexual arousal of the viewer. That Rylaarsdam held his penis so as to display it for that purpose is sufficient under this test.
Another contention is that the booth occupied by Kelley is not “any public place, or any place open to the public or exposed to public view” as required by section 647, subdivision (a) or contemplated by Penal Code, section 314. This contention has been foreclosed by People v. Adult World Bookstore (1980) 108 Cal.App.3d 404 [166 Cal.Rptr. 519]. There, the Court of Appeal stated: “We find ample evidence to support the trial court’s implied finding of knowledge ‘of the presence of persons who may be offended’ as well as that the conduct occurred in a ‘place open to the public.’ (Pryor supra, 25 Cal.3d at p. 257.) Not everyone who enters a dirty bookstore (euphemistically adjectived ‘adult’), expects to be molested, propositioned, or subjected to an open view of live homosexual acts of others. Indeed, in entering such a store, a member of the public exercises his or her own right of privacy and the First Amendment right to see, read, and observe on film sexually explicit, even sordid, activities. This is what the store purports to offer. To attribute to each incoming customer the concurrent expectation inter alia that he or she will be solicited to perform sexual acts through the ‘glory hole’ of an adjoining motion picture booth would have a chilling effect *Supp. 9 upon such fundamental rights. .It follows that those who perform sexual acts within view of neutral customers of the stores, or who expose themselves to them or solicit them to perform or participate in sexual activity, undeniably do so in a place open to the public and with the reasonable expectation that the customers (at least certain of them) are likely to be offended.” (108 Cal.App.3d at p. 410.)
Finally, Rylaarsdam contends that the evidence is insufficient to support a finding that he knew or should have known of the presence of a person who might be offended by his conduct. As this argument is phrased by defendant, he did not know nor should he have known “of the presence of another person who would be offended by his conduct,” but, to the contrary, the evidence establishes that he had a good faith belief that Sergeant Kelley would not be offended by his conduct.
As we view this element of Pryor, the requirement that defendant know or should know of the presence of a person who may be offended has two parts. First, it is a factual question whether defendant knew or should have known of the other person’s presence. (In re Anders (1979) 25 Cal.3d 414 [158 Cal.Rptr. 661, 599 P.2d 1364]. [Defendant was masturbating in a toilet stall equipped with a door containing a screened opening. It was a factual question whether defendant should have known of the presence of a person outside the stall who could observe him through the opening.]) Secondly, it is a factual question whether defendant knew or should have known that the observer “may be offended” by such conduct. (People v. Adult World Bookstore, supra, 108 Cal.App.3d at pp. 409-410.)
It is not the burden of the prosecution to prove that the observer was in fact offended by the conduct but only that the conduct was such that defendant should know that the observer “may be offended.” Although the distinction is a subtle one, it is significant. The thrust of this inquiry is the state of mind of defendant—whether he should know that his conduct may offend another. Whether the observer thereafter is offended thus has minimal evidentiary bearing upon defendant’s preceding state of mind.
Giving defendant’s testimony full credibility, we cannot say as a matter of law that the trier of fact could not find that defendant should have known that his conduct might offend an observer. The touching of his exposed and erect penis for the attempted sexual arousal of Officer *Supp. 10 Kelley was conduct which the Supreme Court in Pryor has identified as “conduct of a type likely to offend.” (25 Cal.3d at p. 256.) Even if Rylaarsdam could reasonably conclude that the response to his initial overtures was “positive” because he had not received a negative one, and therefrom he could reasonably conclude further that what otherwise would be deemed an offensive course of conduct would probably be accepted, that belief would not rule out the possibility that the observer “may be offended” by his conduct. The evidence was therefore sufficient to support a finding that defendant should have known that his conduct might offend Sergeant Kelley. (Cf. People v. Adult World Bookstore, supra, 108 Cal.App.3d at p. 410.)
People v. Lohman—Crim. A. No. 18124
Sergeant Keith D. Johnson of the Los Angeles Police Department, working in the vice unit, testified that on February 20, 1979, he went to the men’s restroom at Griffith Park. He entered and walked along the wall containing the urinals and observed defendant Lohman seated on a toilet in an open stall with his pants down around his ankles and his hands in the area of his groin. Johnson took a position at a urinal directly across from the stall occupied by defendant. After four or five seconds, he glanced over his shoulder and observed defendant rubbing his groin area. About 10 seconds later, he again glanced over his shoulder and observed defendant masturbating his erect penis. Johnson told defendant he would be right back, that he wanted to see if anyone was coming. He left and signalled his partner, who placed defendant under arrest.
Defendant testified that he was seated on the toilet and observed Officer Johnson, who was clad in denim pants and a sports shirt, enter the restroom and stand at the urinal. He did not know what Johnson was doing, although he seemed to be taking an inordinate amount of time. According to defendant, Johnson looked frequently over his shoulder at defendant. Defendant admitted fondling his genitals and groin area, but denied masturbating.
The trial judge instructed the jury in accordance with the 1979 revision of CALJIC No. 16.400[3] as follows: “Every person is guilty of violating Penal Code, Section 647 (a), a misdemeanor, who:
*Supp. 11 “(1) With the specific intent to sexually arouse, gratify, annoy or offend,
“(2) [engages] in conduct which involves the touching of the genitals, in any public place, or a place open to the public or exposed to public view, and
“(3) Knows or should know that there is or will be present a person who may be offended by such conduct.” (Italics added.)
The court refused to give defendant’s alternative instruction reading as follows: “The jury is instructed that even if the alleged conduct occurs in a location that is technically a public place, a place open to the public or one exposed to public view, that there is no violation if there are no persons present who may be offended.”
Defendant contends that the instruction given the jury was erroneous in permitting a finding of guilt for engaging in conduct without another person who may be offended by it being actually present. The People argue that the instruction is correct, that all that is required is the reasonable likelihood of the presence of someone who may be offended. Both sides point to the following language in Pryor as supportive of their positions: “Finally, in In re Steinke, supra, 2 Cal.App.3d 569, 576, the court stated that the gist of the offense proscribed in [Penal Code section 647] subdivision (a) ... is the presence or possibility of the presence of some one to be offended by the conduct. We agree; even if conduct occurs in a location that is technically a public place, a place .open to the public, or one exposed to public view, the state has little interest in prohibiting that conduct if there are no persons present who may be offended.12 The scope of section 647, subdivision (a), should be limited accordingly.” (25 Cal.3d at p. 256.)[4]
We believe it is clear from the context of the quoted passage that the Supreme Court was at this point in the opinion addressing itself to the *Supp. 12 issue of what constitutes a public place or place open to the public. As had been previously discussed in Pryor, subdivision (a) of section 647 fills in a gap left by two other penal statutes designed to protect members of the public from offense or annoyance. Penal Code, section 314 prohibits indecent exposure “in any public place, or in any place where there are present other persons to be offended or annoyed thereby.” Section 311.6 of the Penal Code prohibits “obscene live conduct to or before an assembly or audience ... in any public place or in any place exposed to public view, or in any place open to the public or to a segment thereof .... ” “Neither statute, however, is directed at sexual conduct, as distinguished from indecent exposure, when such conduct is not intended to arouse the prurient interest of an audience. Section 647, subdivision (a), we believe, serves the function of filling this gap in the penal law.” (25 Cal.3d at pp. 255-256.)
The three Penal Code sections thus serve the purpose of protecting members of the public from offense or annoyance in their use of public places or facilities. In its reference to In re Steinke (1969) 2 Cal.App. 3d 569 [82 Cal.Rptr. 789], the Supreme Court was defining “a place open to the public.” It distinguished apartments, hotel rooms, enclosed toilet booths and the enclosed room of a massage parlor, wherein the relationship of the occupant to the place is such that the possibility of members of the public being present is excluded, from others where there is the possibility of such presence. In the latter places, the possibility of members of the public being present preserves their nature as “public places” or “places open to the public” and requires protection of members of the public in their use of them.
That this is a correct reading of Pryor we believe is made clear from other statements in the opinion. Thus, the opinion states in the initial formulation of the rule that defendant must be “a person who knows or should know of the presence of persons who may be offended ...” (P. 244.) Again, “[t]he statute thus serves the primary purpose of protecting onlookers who might be offended by the proscribed conduct.” (P. 255.) And finally, “. . . the state has little interest in prohibiting that conduct if there are no persons present who may be offended. The scope of section 647, subdivision (a), should be limited accordingly.” (P. 256.)
We believe that the repeated references in the Supreme Court’s opinion to the presence of a person who may be offended were not inad *Supp. 13 vertent. The offense is thus made one requiring a victim who witnesses the offensive conduct, thereby enhancing certainty of its commission, whereas if there were no victim, the fact of the commission of the conduct might depend upon proof derived solely from circumstantial evidence.[5]
The instruction, permitting the jury to find guilt if a person who may be offended “will be present,” was erroneous. However, on the facts of this case, we conclude that such error was harmless beyond a reasonable doubt. (People v. Watson (1956) 46 Cal.2d 818, 837 [299 P.2d 243].) There was no dispute that Sergeant Johnson was present and known by defendant to be present at the time of the alleged conduct. Lohman’s defense was that he did not engage in the conduct of which he was accused. The jury apparently resolved this conflict in the testimony against defendant. Under these circumstances, it is not reasonably probable that the jury was influenced by the error in the instruction in reaching its verdict.
Lohman also contends that it was error to refuse an instruction reading: “The jury is instructed if you find that the officer, by his conduct, encouraged Defendant to commit the act in his presence the Defendant would not be guilty of offending him in a public place.”
We find no error particularly since such an instruction in any event is not supported by the evidence under either defendant’s or Sergeant Johnson’s version of the facts. Nothing in cither’s testimony indicates any encouragement of defendant, and defendant denied altogether engaging in the claimed offensive conduct.

Additional Contentions of Rylaarsdam

Defendant also argues that the evidence does not support his conviction of violating Penal Code section 314, subdivision 1. He recognizes that indecent exposure may consist of conduct in a private home if there is a person present who may be offended by such conduct. (People v. Tolliver (1980) 108 Cal.App.3d 171, 173-174 [166 Cal.Rptr. 328].) *Supp. 14 However, he urges that the statute should not be applied to punish “those who expose themselves solely to others who reasonably appear to desire to engage in such activity.” We believe there should be no difference in the test of possible offense in this section from that of section 647, subdivision (a). If anything, section 314, subdivision 1, appears to. present an even broader test, since it prohibits conduct “where there are present other persons to be offended or annoyed thereby.”
Another contention is that Penal Code section 314, subdivision 1, is a lesser-included offense within Penal Code section 647, subdivision (a). Under section 654 of the Penal Code he cannot be convicted of both.
We need not determine this latter contention. (Cf. People v. Swearington (1977) 71 Cal.App.3d 935 [140 Cal.Rptr. 5], with People v. Tolliver (1980) supra, 108 Cal.App.3d 171.) The proscription of section 654 is against multiple punishment. (People v. Beamon (1973) 8 Cal.3d 625, 636 [105 Cal.Rptr. 681, 504 P.2d 905].) Customarily, in such circumstances the trial judge imposes sentences on the more serious offense and stays execution of sentence as to the less seriously punishable offense. (People v. Williams (1975) 51 Cal.App.3d 65, 67 [123 Cal.Rptr. 891].) In the instant case, the trial judge suspended imposition of sentence on both counts and placed defendant on probation. Punishment has not been, and may never be, imposed.
Finally, defendant contends that a condition of probation, number 21, that he not frequent places where homosexuals congregate, is unduly restrictive. We agree.
A probationary condition must be reasonable in proportion to, as well as reasonably related to, the crime committed. (People v. Lent (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545]; People v. Keller (1978) 76 Cal.App.3d 827, 838 [143 Cal.Rptr. 184].) A condition that defendant, a homosexual, stay out of places where homosexuals congregate would effectively prevent him from participating in lawful social activities as well as business, political and religious activities of homosexually oriented groups. We believe that condition 11, that he remain away from the premises of the commission of the offense and similar premises, adequately guards against possible recurrence of the convicted offenses.
The judgment in A. Crim. No. 18124 is affirmed.
*Supp. 15 In Crim. A. No. 18167, the trial court is ordered to strike from the order of probation the condition following number 21. As so modified the judgment is affirmed.
Bernstein, J., and Jones, J., concurred.

Subdivision (a) of section 647 prohibits both conduct and solicitation of conduct. On this appeal, we consider only the prohibited conduct.

Six appeals were consolidated for the purpose of argument. We believe, however, that the two appeals which we now address sufficiently encompass the issues with which we are concerned.

CALJIC No. 16.400 was again revised in 1980. As it now reads, there is no offense unless defendant “knows or should know that there is present a person who may be offended by such conduct."

Footnote 12 of Pryor reads as follows: "12ln re Steinke, supra, which involved sexual acts in a closed room in a massage parlor, suggested that a closed room made available to different members of the public at successive intervals was a place ‘open to the public’ under section 647, subdivision (a) (See 2 Cal.App.3d at p. 576; People v. Freeman (1977) 66 Cal.App.3d 424, 428-429 [136 Cal.Rptr. 76].) We do not endorse that interpretation, which would render a fully enclosed toilet booth (cf. Bielicki v. Superior Court (1962) 57 Cal.2d 602 [21 Cal.Rptr. 552, 371 P.2d 288]), a hotel room (cf. Stoner v. California (1964) 376 U.S. 483 [11 L.Ed.2d 856, 84 S.Ct. 889]), or even an apartment a place ‘open to the public’ under this section.”

We note that after the Pryor decision was rendered, the City Attorney of Los Angeles sought rehearing, pointing out that the opinion appeared to require the presence of a person to be offended and seeking modification of the opinion, which petition was denied.