Peter KUZINICH, Sr.,
Plaintiff-Appellant,

v.

COUNTY OF SANTA CLARA; Board of Supervisors of the County of Santa Clara; Rod Diridon; Suzanne Wilson; Dominic Cortese; Dan McCorquodale; Geraldine F. Steinberg, Defendants-Appellees.

No. 81–4460.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 14, 1982.
Decided Oct. 13, 1982.
As Amended Jan. 24, 1983.

Amiram J. Givon, Oakland, Cal., for plaintiff-appellant.

Bruce Nye, Popelka, Allard, McCowan & Jones, San Francisco, Cal., for defendants-appellees.

Appeal from the United States District Court for the Northern District of California.

Before CHOY and NORRIS, Circuit Judges, and SMITH,* District Judge.

RUSSELL E. SMITH, District Judge:

This is an appeal from a summary judgment denying plaintiff all relief on his claims of violations of certain constitutional rights.

The record shows the following:

For the last ten years the plaintiff, Kuzinich, has operated an adult movie theater, the Pink Poodle, and an adult bookstore, the Bascom Bookcase, in Burbank, an unincorporated area in Santa Clara County, California. Kuzinich was required to have a use permit, and the first of these, containing conditions, was granted in September 1973 by the Santa Clara County Planning Commission. It expired in October 1974, and the County so notified Kuzinich in January 1976. Kuzinich applied for a second use permit that same month. Due to his failure to comply with the conditions stated in the first use permit, there was a delay in issuance of a second permit, but one was finally issued in June 1977. The second permit also required compliance with numerous conditions and was valid for two years. The conditions included items such as plans for landscaping, paving and improving the parking lot, and repair of a fence. On February 13, 1980, the County notified Kuzinich that his second use permit had expired some eight months earlier. The conditions imposed by prior permits had not been met. On April 2, 1980, Kuzinich filed an application for a new use permit. He was informed on May 2, 1980, that this application was incomplete and submitted additional information. On July 21, 1980, he was told that his application was complete. The application was placed on the Planning Commission's agenda for October 16, 1980, but it was never heard by that commission. Kuzinich has not complied with the conditions of his use permits in several particulars. On October 6, 1980, the Board of Supervisors of the County directed County counsel to file an action to enjoin the operation of the Pink Poodle and the Bascom Bookcase, and on the same day adopted as an emergency measure an amendment to the zoning ordinances which made the operation of Kuzinich's adult businesses unlawful in the locations at which they were operating. On October 14, 1980, the County filed an action for an injunction in the Superior Court of California on the ground that Kuzinich was operating illegally since his use permit had expired in 1979. A preliminary injunction was granted but was later stayed by the California Court of Appeals.

As we see it, these problems appear:

First: Was the rezoning ordinance valid?

Second: If the ordinance was valid, was the denial of Kuzinich's exemption as a preexisting nonconforming use invalid because of invidious selective treatment?

Third: What effect do the doctrines of immunity have upon this case?

Fourth: Was there a conspiracy?

## THE VALIDITY OF THE ORDINANCE

In *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 68, 101 S.Ct. 2176, 2183, 68 L.Ed.2d 671 (1981), the Court stated: "[W]hen a zoning law infringes upon a protected liberty, it must be narrowly drawn and must further a sufficiently substantial government interest." Within these limits zoning is a valid exercise of the police power and, under some circumstances notwithstanding the first amendment, the zoning power may extend to places dealing in that which is sexually explicit but not adjudged to be obscene. *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). In *Young* the City of Detroit's ordinance was designed to control the concentration of certain regulated uses which included adult motion picture theaters and adult bookstores. There was evidence that such concentration "tends to attract an undesirable quantity and quality of transients, adversely affects property values, causes an increase in crime, especially prostitution, and encourages residents and businesses to move elsewhere." *Id.* at 55, 96 S.Ct. at 2445. The Detroit ordinance was enacted prior to the establishment of the theaters as adult theaters.

It is clear, however, that zoning may not be employed for the purpose of restricting the content of speech, including that which is sexually explicit. In the *Young* case Justice Powell, in his concurrence with the plurality opinion, repeated the four-part test stated in *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672

---

* The Honorable Russell E. Smith, Senior United States District Judge, District of Montana, sitting by designation.

(1968). The third part of that test requires that the governmental interest be "unrelated to the suppression of free expression." 427 U.S. at 79–80, 96 S.Ct. at 2456–2457. While less direct, the language in the plurality opinion to the effect that there is a need for "absolute neutrality by the government; its regulation of communication may not be affected by sympathy or hostility for the point of view being expressed by the communicator" (*Id.* at 67, 96 S.Ct. at 2450) expresses the same thought.

■ While the ordinance here was said to be copied after the Detroit ordinance validated in *Young,* we find very little evidence bearing on the concentration of adult enterprises. Rather we find a concern with complaints about traffic and littering. Conclusions alone support the thesis that adult bookstores and movie theaters have any different impact upon traffic and littering than other kinds of businesses have. The law requires that an ordinance restricting first amendment rights be narrowly drawn, and it does not appear from this record why an ordinance directed at traffic and littering would not accomplish what zoning was expected to accomplish. In short, the need to be served and the public purpose to be accomplished do not appear as clearly here as they did in *Young.*

There was some evidence, largely in the nature of conclusions, that the amendment to the zoning ordinance was passed for the purpose of controlling traffic and littering and that the adult businesses did have a negative effect on adjoining residential areas. But there was also evidence from which it might be inferred that the basic purpose was to control pornography. Supervisor Diridon assigned an intern, Pamela Poore, to investigate three adult enterprises in Burbank. Her report to Diridon, dated October 6, 1980, and entitled "Pink Poodle Packet," was forwarded by him on the same day to the Board of Supervisors with a recommendation that it be adopted.

The report contained the following:

Following complaints regarding public display of obscene films and books and a court ruling allowing public officials to stop such displays on the basis that these exhibits constitute a "public nuisance," Rod Diridon, in 1976, began a campaign against adult movie theaters, live adult entertainment, adult bookstores, and cardrooms. Although cardrooms in unincorporated areas of the County were closed, the efforts proved unsuccessful as applied to the Pink Poodle. After four years, some of the original conditions remain unsatisfied.

and

By failing to establish a reasonably moderate distance between adult entertainment facilities and residential and educational areas, the County risks perpetuating a negative influencd (*sic*) on young people of the County.

A number of citizens have registered their complaints against the adult movie theaters, live entertainment theaters, and adult bookstores in the County. By failing to address the concerns of our constituents, we run the risk of alienating the public we are here to serve.

The report recommended that the use permits of three adult enterprises, including the Pink Poodle and the Bascom Bookcase, be abated; that the Board of Supervisors, instead of the Planning Commission, have final authority over use permits for adult enterprises; that the zoning ordinances be amended to prohibit adult enterprises in certain areas; that a hearing on a zoning ordinance be scheduled for November 3, 1980; and that in the interim an emergency ordinance be adopted.

On October 7, 1980, an emergency ordinance was adopted. By its terms it was to expire in four months. On October 14, 1980, it was amended to include an additional area, and on November 17, 1980, the emergency ordinance was adopted as final. On November 14, 1980, the Planning Commission noted its disapproval.

A statement by Pamela Poore appears in the record to the effect that Commissioner Diridon wanted the emergency ordinance to stop the applications for the Pink Poodle and the Bascom Bookcase permits while a formal ordinance was being adopted. The following appears in the Poore report:

The County has no means of enforcing conditions set by the ASA [Architectural Site Approval Committee], other than to deny the permit. If the conditions are satisfied by the time of inspection by the ASA, the Planning Commission will grant the permit. The County cannot enforce compliance with the original conditions once the permit is issued.

■ A summary judgment is proper here only if it can be said that, viewing the evidence in the light most favorable to Kuz-

inich, it appears as a matter of law that the purpose of the ordinance was to serve some substantial public interest unrelated to the suppression of free speech. That cannot be said. *See Board of Education v. Pico,* —— U.S. ——, 102 S.Ct. 2799, 73 L.Ed.2d 435 (1982), in which the Supreme Court held in a first amendment case that summary judgment was not proper where differing conclusions could be drawn from the evidence.

## THE INVIDIOUS SELECTIVE TREATMENT CLAIM

If the zoning ordinance is ultimately held to be valid, Kuzinich would still be entitled to continue his businesses under the exception of existing nonconforming uses if he was lawfully in business at the time the ordinance was enacted. Whether he was lawfully in business depends in turn upon whether his rights to due process and equal protection were honored. Kuzinich claims that he was denied due process when the Board of Supervisors directed County counsel to commence an abatement proceeding against him without giving him prior notice. We see no due process problem and reject the unique claim that a person is entitled to a hearing before a governmental body may direct its counsel to file a lawsuit. The decision was executive, not adjudicatory.[1] None of plaintiff's rights could be affected until he had a full opportunity to present his view in a court proceeding.

The equal protection claim is more serious. A law, valid on its face, but so administered as to unjustly discriminate between persons in similar circumstances, may deny equal protection. *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). As of the time that the direction to abate was given, Kuzinich was one of a class of people who were required to have use permits, and he was entitled to the same consideration as others when a renewal was sought. Kuzinich claims that the policy of renewal of permits was to secure voluntary compliance and that, out of 250 businesses which were carried on without a permit, the three adult enterprises (two of which were Kuzinich's) were singled out for abatement.[2] The defendants claim that there were sixteen abatement proceedings brought in the years between 1975 and 1980.

On the other hand, the record does show that Kuzinich had been in constant violation of the conditions of his use permit for many years and was grossly negligent in keeping the permit current. He did not have a permit at the time of the abatement action.

The rule as to selective prosecution was stated by this court in *United States v. Scott,* 521 F.2d 1188, 1195 (9th Cir. 1975),. as follows:

> The second major assignment of error is that Scott was discriminatorily singled out for prosecution because of his vocal opposition to the income tax. In order to prevail in this allegation appellant must bear the burden of proving at least a prima facie case. This requires that appellant first demonstrate that others similarly situated generally have not been prosecuted for conduct similar to that for which he was prosecuted. Secondly, appellant must show that his selection was based on an impermissible ground such as race, religion or his exercise of his first amendment right to free speech.

Even if the evidence requires a finding that the character of Kuzinich's businesses motivated the abatement, that alone is not enough. Kuzinich must show that he was treated differently than those who were as chronically delinquent and as continually in violation as he was. From the record here differing inferences could be drawn, and a summary judgment should not have been granted. *Gaines v. Haughton,* 645 F.2d 761, 769 (9th Cir. 1981).

## IMMUNITY

We hold that members of local legislative bodies have complete immunity from suits based on their legislative acts and also that the enactment of a general zoning ordinance is a legislative act. Though the question has been left open until now in this circuit (*see Morrison v. Jones,* 607 F.2d 1269, 1274 (9th Cir. 1979)), in so holding we follow what we believe to be the rule announced in *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979),

---

1. See *OPP Cotton Mills, Inc. v. Adm'r of Wage & Hour Div., Dep't of Labor,* 312 U.S. 126, 152 53, 61 S.Ct. 524, 535–536, 85 L.Ed. 624 (1941).

2. An adult bookstore known as "Y-Not Enterprises" was abated. It had never had a use permit.

and the positive declarations by the Fifth, Fourth, and Eighth Circuits in the cases of *Hernandez v. City of Lafayette,* 643 F.2d 1188 (5th Cir. 1981); *Bruce v. Riddle,* 631 F.2d 272 (4th Cir. 1980); and *Gorman Towers, Inc. v. Bogoslavsky,* 626 F.2d 607 (8th Cir. 1980). We add only this to the decisions in those cases: the manifest need for a rule of absolute immunity is illustrated in this case. Here legislators are involved in balancing social needs against constitutional rights, the kind of balancing which often produces plurality opinions, and almost always dissenting opinions, in the Supreme Court. These legislators now find themselves sued for the total of $2,500,000.00 general damages and $5,000,000.00 punitive damages by a plaintiff whose business, as nearly as we can determine from the record, has not been shut down one day.

■ There is no immunity protecting the County of Santa Clara. *Owens v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *Gorman Towers,* 626 F.2d at 613. Though both *Owens* and *Gorman Towers* dealt with cities, their rationale applies to the case of counties as well.

■ The individual members of the Board of Supervisors enjoy no absolute immunity from actions arising out of the order directing the County counsel to institute an action, the purpose of which was to abate Kuzinich's businesses. The order was not a legislative act, but rather an executive one. As to such acts the supervisors enjoy a qualified rather than an absolute immunity. *See Morrison v. Jones,* 607 F.2d 1269 (9th Cir. 1979).

## THE CONSPIRACY CLAIM

■ The affidavits show that the defendant Diridon did not conspire with the defendant Engelbrecht, and the judgment insofar as it dismisses Count II of the complaint is affirmed.

The judgment is reversed, and the case is remanded to the district court for further proceedings not inconsistent herewith.[3]

Following the filing of the opinion in this matter on October 13, 1982, the panel was advised that the Court of Appeal of the State of California, First Appellate District, Division Three, had decided the case of *County of Santa Clara v. Peter Kuzinich, Sr.,* A013033, 1 Civ. No. 51659, Super.Ct. No. 460801. In that case the California Court of Appeal sustained an order of the trial court denying a preliminary injunction. In so doing, it passed on the constitutionality of the ordinances in question in this language:

> It is a sufficient response to appellant's challenge that we find the ordinance is valid on its face and that it is reasonably probable that the validity of the zoning ordinance would be sustained at a trial on the merits. (*DeMott v. Board of Police Comrs.* (1981) 122 Cal.App.3d 296, 299–301 [175 Cal.Rptr. 879]; *People v. Adult World Bookstore* (1980) 108 Cal.App.3d 404, 408 [166 Cal.Rptr. 519].) Accordingly, if this were the only issue before us, we would conclude that the trail court did not abuse its discretion in granting the request for a preliminary injunction.

■ It is now suggested that the decision of the California Court of Appeal became final prior to the finality of the decision of this court and is therefore res judicata and the basis for collateral estoppel.

It is settled law that, unless a state's res judicata rules violate due process, federal courts hearing 42 U.S.C. § 1983 actions apply the rules of the state court from which the judgment issues. *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 416, 66 L.Ed.2d 308 (1980); *Kremer v. Chemical Construction Corp.,* —— U.S. ——, 102 S.Ct. 1883, 1889, 1897–98, 72 L.Ed.2d 262 (1982). In California,

> The granting or denial of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy. It merely determines that the court, balancing the respective equities of the parties, concludes that, pending a trial on the merits, the defendant should or that he should not be restrained from exercising the right claimed by him.

*Continental Baking Co. v. Katz,* 68 Cal.2d 512, 528, 67 Cal.Rptr. 761, 771, 439 P.2d 889, 899 (1968) (quoting *Miller & Lux v. Madera Canal & Irrigation Co.,* 155 Cal. 59, 62–63, 99 P. 502, 511 (1909)). As such, issues liti-

---

**3.** (Page 10) We note that in *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), the Court discussed the fact that the impact of the Detroit ordinance on free speech was minimal because adult movies could operate in other parts of Detroit. The trial judge on remand should consider that problem as a part of the general balancing necessary in cases of this sort. *See Keego Harbor Co. v. City of Keego Harbor,* 657 F.2d 94 (6th Cir. 1981); *CLR Corp. v. Henline,* 520 F.Supp. 760 (W.D.Mich.1981).

gated in a preliminary injunction action are not res judicata and do not form a basis for collateral estoppel.

In this case it is clear that the state court in *County of Santa Clara v. Hayden & Kuzinich*, Nos. A013032 and A013033 (Cal. Ct.App. Sept. 30, 1982), did not intend a final adjudication of the constitutionality of the ordinance as applied. Instead, although stating that the ordinance was valid on its face, the court noted only that it is "reasonably probable" that the validity of the ordinance as applied would be sustained at trial. *Id.* at 8. *See Bomberger v. McKelvey*, 35 Cal.2d 607, 220 P.2d 729 (1950).