Allen CZERNIAK, Ronald Higgins, individually and on behalf of others similarly situated, Plaintiffs,

v.

CITY OF MILWAUKEE, a municipal corporation of the State of Wisconsin; Harold A. Breier, Chief of Police of the City of Milwaukee Police Department; Richard Heder, Captain of the Vice Squad of the City of Milwaukee Police Department; Milwaukee Police Officer Michael Erdman; and their agents, employees, assistants, successors and all other persons acting in concert with them or at their control, Defendants.

No. 84–C–0259.

United States District Court, E.D. Wisconsin.

June 13, 1985.

---

James M. Shellow, Milwaukee, Wis., for plaintiffs.

Rudolph M. Konrad, Asst. City Atty., Milwaukee, Wis., for defendants.

## MEMORANDUM AND ORDER

WARREN, District Judge.

### BACKGROUND

■ This action was initiated on February 24, 1984, when the plaintiffs, both adult residents of the City of Milwaukee, Wisconsin, filed their complaint on their "own behalf and on behalf of all persons who have been arrested and imprisoned by City of Milwaukee police officers for engaging in private, consensual sexual activities in private bookstore booths in the City of Milwaukee, Wisconsin." Plaintiffs' *Complaint* at 2 (February 24, 1984).[1] The specific claim articulated by plaintiff Allen Czerniak springs from his arrest on September 20, 1983, for engaging in sexual activity in a private bookstore booth at the Paradise Bookstore. The complaint states that, following his arrest, this plaintiff was interrogated, harassed, abused, and jailed by the City of Milwaukee Police until his release on September 21, 1983. Plaintiff Czerniak charges that although the arrest-

ing officer, defendant David Conroy, sought charges of disorderly conduct, the City Attorney's Office declined prosecution.

Similarly, plaintiff Ronald Higgins charges that he, too, was arrested on September 20, 1983, for engaging in sexual activity in a private bookstore booth at the Paradise Bookstore. Like his co-plaintiff, this party was allegedly interrogated, harassed, abused, and jailed until his release on the following day; according to the complaint, the City Attorney's Office likewise refused to prosecute him, despite the attempt of the arresting officer, defendant Michael Erdman, to secure charges of disorderly conduct against him.

According to the two named plaintiffs, their arrests and subsequent imprisonments were undertaken willfully, wantonly, maliciously, and with reckless disregard for the their rights and the rights of others. They further charge that the conduct of the arresting officers was in furtherance of a policy, custom, or practice of the City of Milwaukee Police Department to arrest persons for engaging in sexual activities in private bookstore booths. Purportedly formulated and implemented at the direction of defendants Harold A. Breier, formerly the Chief of Police, and Richard Heder, Captain of the Vice Squad, this arrest policy is, according to the plaintiffs, contrary to the position adopted and advanced by the City Attorney against prosecution of individuals apprehended while engaging in such sexual conduct. Accordingly, it is the plaintiffs' principal allegation that neither of the arresting officers had probable cause to arrest or imprison them on September 20, 1983, for engaging in sexual activities at the Paradise Bookstore.

Furthermore, the complaint charges that the City of Milwaukee Police Department intends to continue its policy and practice of arresting and incarcerating persons for such sexual conduct, as follows:

---

1. Although the plaintiffs have thus framed their complaint as a class action, the issue of certification remains unresolved. Indeed, the Court will certify a class only upon a proper motion under Rule 23(c) of the Federal Rules of Civil Procedure, empowering the trial judge, "[a]s soon as practicable after the commencement of an action brought as a class action, ... [to] determine by order whether it is to be so maintained."

Several persons have been arrested and jailed for such activities in 1984. When the Office of the City Attorney declined to prosecute for any violation of law, these persons were discharged from custody.

Despite their knowledge of the illegality and unconstitutionality of the policy and practice described above, the individual defendants and the City of Milwaukee as a matter of policy have not taken steps to terminate this conduct, have not disciplined or otherwise properly supervised the individual officers engaged in the above-described practices, and have instead sanctioned the above-described practices through deliberate indifference to the rights of others, including the plaintiffs.

Plaintiffs' *Complaint* at 8 (February 24, 1984).[2]

The plaintiffs claim that the Police Department's policy violates their rights under the Fourth, Ninth, and Fourteenth Amendments to the United States Constitution in that they were arrested and imprisoned without probable cause to believe that they had violated any law; that they were subjected to summary punishment by the arresting officers without due process, notwithstanding the fact that those officers knew that the subject conduct would not be prosecuted; and that they were effectively punished in the exercise of their constitutional rights to privacy, as protected under the state and federal constitutions. They further claim that the acts of arresting officers Conroy and Erdman constituted false arrest, false imprisonment, and intentional infliction of emotional distress, all purely state law claims incorporated in this action pursuant to the Court's pendent jurisdiction.

Based on these allegations, the plaintiffs seek a preliminary and permanent injunction preventing the defendants from arrest-

ing and imprisoning persons for engaging in private, consensual activities in private bookstore booths; declaratory judgment that the particular arrests upon which this lawsuit is premised were, indeed, unconstitutional; and compensatory and punitive damages for each plaintiff in the amount of $150,000.00. They also seek their reasonable attorney's fees incurred in the prosecution of this matter and such other relief as the Court deems just and proper.

On March 28, 1984, the defendants moved to dismiss the complaint in its entirety on the basis that it fails to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In support of their motion, the defendants argue, first, that probable cause existed for the plaintiffs' arrest on September 20, 1983. In particular, it is the movants' position that the movie-viewing booths in the Paradise Bookstore are public—and not private— places in which the long-established laws regulating public conduct are properly enforced. In this context, the defendants direct the Court's attention to several state court decisions arguably supporting this critical contention that adult bookstore movie booths are, indeed, public places. *See, e.g., Cammack v. Texas*, 641 S.W.2d 906 (Tex.Ct.App.1982); *People v. Adult World Bookstore*, 108 Cal.App.3d 404, 166 Cal.Rptr. 519 (Cal.Ct.App.1980).

Moreover, the defendants argue that the named plaintiffs were not deprived of their rights under the due process clause of the Fourteenth Amendment since Wisconsin state law—in particular, Wis.Stat. § 893.80, prescribing the procedure for initiating damages claims against municipalities or their employees—provides these parties with an adequate remedy. Citing the United States Supreme Court's opinion in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), for the central prop-

---

**2.** In further support of their charge that the Milwaukee Police Department's arrest policy in these matters is inconsistent with the practice of nonprosecution followed by the City Attorney, the plaintiffs state that of the 76 persons arrested and jailed in 1982 for engaging in sexual activities in private bookstore booths, none was prosecuted for any violation of the law; they also allege that of the 41 persons so arrested and imprisoned in 1983, all were released without prosecution. Plaintiffs' *Complaint* at 5–6 (February 24, 1984).

osition that the negligent deprivation of a person's property does not violate due process if an adequate state remedy is available to redress the alleged wrong, the defendants argue for application of that doctrine to the deprivation of liberty purportedly effected in this case:

> If the plaintiffs were arrested without probable cause, they have available to them adequate post-deprivation remedies for the reasons that sec. 893.80, Wis. Stats., permit them to file a claim for damages against the City of Milwaukee or its employes or both. In the event the claim is denied, they have the right under the statute to have a hearing before the Common Council of the City of Milwaukee. In the event the Council denies the claim, they have the right to bring an action for money damages in the state court under a false arrest theory. See sec. 893.57, Wis.Stats.

Defendants' *Memorandum in Support of Motion to Dismiss* at 7–8 (March 28, 1984).

Finally, the defendants maintain that no liability may be ascribed to the City of Milwaukee or any of the employees of the Milwaukee Police Department merely as a result of the prosecutorial decision not to charge the plaintiffs with any violation of law in the wake of their arrests on September 20, 1983. Noting that the decision to charge a person with a violation of the law is solely within the discretion of the prosecutor, *see, e.g., Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Powell v. Katzenbach,* 359 F.2d 234 (D.C.Cir.1965), *cert. denied,* 384 U.S. 906, 86 S.Ct. 1341, 16 L.Ed.2d 359 (1966), the defendants maintain that recognition of the present civil rights cause of action would prove both unwarranted and unwise, as follows:

> To create a theory of liability which would support a lawsuit against the employer of the prosecuting attorney, the police chief and supervisory officers in the police department, when a lawful arrests occurs but the person arrested is not charged, would seriously undermine the freedom of the prosecutor to use his discretion for the public good, and introduce needless confusion on the part of police officials over what laws should be enforced and what laws should not be enforced. Section 62.09(13)(a), Wis. Stats., states in pertinent part: "The chief and each policeman ... shall arrest with or without process and with reasonable diligence take before the municipal judge or other proper court every person found in the city engaged in any disturbance of the peace or violating any law of the city or ordinance of such city ..." If a disagreement exists between the prosecuting attorney and the chief of police over whether or not a specific law should be enforced, the proper arena for resolving that difference is the legislative body which enacted the law. For the courts to create a cause of action arising out of the failure to issue charges would give the prosecutor authority not only over who should and should not be charged, but also who should and should not be arrested. That plainly is not the result contemplated by the legislature when it gave prosecutors and police officers their respective authority.

Defendants' *Memorandum in Support of Motion to Dismiss* at 9–10 (March 28, 1984).

To establish with greater specificity the factual basis upon which their dismissal request moves, the defendants have submitted the affidavits of the arresting Milwaukee Police officers. By his affidavit of March 16, 1984, Officer David Conroy states that he arrested Allen Czerniak after observing him masturbating in an adjoining movie-viewing booth and following this plaintiff's insertion of his erect penis through a hole into the booth occupied by the affiant. According to his companion affidavit of March 19, 1985, defendant Michael Erdman arrested Ronald Higgins on the same day and at the same place, likewise after looking through the oblong-shaped hole in the adjoining movie booths and observing this plaintiff masturbating his penis. The defendants have also supplemented their motion with a certified copy of the Paradise Bookstore's coin-oper-

ated theater license and a copy of Section 83–5 of the Milwaukee Code of Ordinances, governing the operation of such theaters and requiring, in particular, that they be open for inspection by police officers or other city authorities during operating business hours. Based on the several factual averments set forth in the arresting officers' affidavits, the legal arguments articulated in their supporting memorandum, and the supplemental licensing documents described above, the defendants conclude that there are no material issues of fact for trial and that they are entitled to judgment as a matter of law.

By its letter of May 29, 1984, the Court notified counsel for all parties that it would construe the defendants' pending motion as one for summary judgment, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure and, in this context, would review all of the supplemental materials, filed in support of that motion. Consistent with this statement of intention, the Court afforded the plaintiffs the opportunity to file supporting affidavits and miscellaneous materials in addition to their responsive memorandum of law.

The principal position articulated by the plaintiffs in their answering brief of September 25, 1984, is that summary judgment in the defendants' favor is not appropriate based on the City Attorney's announced policy against prosecutions for sexual conduct in adult bookstore movie booths—conduct purportedly protected from warrantless police surveillance and arrest because of its innately private nature. The plaintiffs summarize their apparent difficulty in understanding the defendants' position as follows:

> ... [I]n defense of this suit, the ... City Attorney's Office takes the view that such surveillance practices and arrests are reasonable and do not infringe upon any Fourth Amendment privacy protections.

> In essence, the City Attorney's Office now argues that Vice Squad officers acted reasonably when, on hundreds of occasions, they repeatedly defied the legal advice and warnings of their own legal counsel that these arrests were illegal. It is paradoxical for the very same Office of the City Attorney, which warned that it would not be able to defend police officers who are sued for illegal arrest because of their defiance of the City Attorney's legal advice, to now appear in this matter as defense counsel and seek to justify police misconduct which he had steadfastly condemned prior to the filing of this suit.

Plaintiffs' *Memorandum in Opposition to Motion for Summary Judgment* at 2 (September 25, 1984). In principal support of their position, the defendants have provided the Court with the deposition transcript of one David Felger, a former Deputy City Attorney for the City of Milwaukee. Mr. Felger testifies, among other things, that the policy against prosecution of persons for sexual activities in adult bookstore booths was instituted in 1981, following discussions among representatives of both the City Attorney's Office and the Milwaukee County District Attorney's Office and based principally on state court authority suggesting that such movie-viewing booths are properly regarded as private places for purposes of Fourth Amendment privileges.

In this context, the plaintiffs have also appended to their brief a memorandum written by Mr. Felger in October of 1983, describing the police practice with respect to arrests for sexual activity in adult bookstore booths and explaining the position of the City Attorney—based on both public policy and existing case law—against the prosecution of individuals engaging in such conduct. This nonprosecution policy is further evidenced by the affidavit of one Margaret Montagnino, whose review of public records of citations for disorderly conduct or indecent exposure occurring in adult bookstores in the Milwaukee area in the years 1982, 1983, and 1984, confirms both the incidence of arrests and practice of nonprosecution described in the plaintiffs' complaint; *see* footnote 2, *infra* at 23.

Significantly, plaintiffs Czerniak and Higgins have also submitted affidavits con-

tradicting in some respects those submitted by arresting Officers Conroy and Erdman. While plaintiff Czerniak does not deny that he engaged in certain sexual acts while viewing a movie in the bookstore booth, he maintains that his conduct was undertaken at the invitation of defendant Conroy, who subsequently invited the plaintiff to his truck and arrested him using unnecessary force. Plaintiff Higgins contends that he did not engage in any sexual conduct at all while viewing a movie in the bookstore booth and that he specifically refused Officer Erdman's request to do so some ten or fifteen minutes prior to his arrest.

The plaintiffs rely on these several items of documentary evidence in arguing against the propriety of summary judgment in this case, as follows: First, they identify in the testimony and memorandum of former Deputy City Attorney David A. Felger support for their contention that the defendant officers had no reasonable basis for arresting them for any sexual activity undertaken in the movie booths at the Paradise Bookstore; in fact, the plaintiffs contend that the police practice "is totally inconsistent with the policy adopted by the City Attorney's Office for the three or so years preceding the filing of this lawsuit," and allege affirmatively that Mr. Felger's comments, particularly as set forth in his memorandum of October 27, 1983, "constitute admissions by the defendants in 1983 that they considered adult bookstore movie booths to be private places." Plaintiffs' *Memorandum in Opposition to Motion for Summary Judgment* at 9–10 (September 25, 1984). The plaintiffs thus conclude that because the defendants acted in defiance of the legal advice provided by the City Attorney's Office and instead continued their practice of unconstitutional surveillance and arrest of persons engaging in sexual activity in the privacy of locked movie-viewing booths, these parties may have acted without reasonable cause—a position neatly summarized as follows:

> ... Plaintiffs do *not* claim that simply because the city prosecutor refused to bring charges against the plaintiffs, the plaintiffs have established automatically

the liability of the arresting officers for constitutional violations. Instead, the prosecutor's decision not to prosecute the named plaintiffs, as well as the City Attorney's policy over a period of three years, as reviewed by the Appeals Committee, and as approved by the City Attorney himself, is substantial evidence which may be weighed in determining the reasonableness of the arresting officers' conduct. In fact, the written memorandum of Deputy City Attorney Felger on this subject, with its damaging admissions for the defendants' case, definitely can be considered as admissions of a party opponent through his authorized agent. The same treatment should be afforded the deposition testimony of Attorney Felger.

Plaintiffs' *Memorandum in Opposition to Motion for Summary Judgment* at 20 (September 25, 1984).

In any event, the plaintiffs take issue with the defendants' central belief that movie booths in adult bookstores are public and not private places and, as such, are subject to police surveillance for disorderly conduct and indecent exposure. In this context, the plaintiffs contend that they had a subjective expectation of privacy throughout the period of their presence in the movie-viewing booths, as explained in their personal affidavits; they also invoke both federal and state court authority arguably suggesting that society now regards adult bookstore movie booths as private places, *see, e.g., People v. Dezek,* 107 Mich.App. 78, 308 N.W.2d 652 (Mich.Ct. App.1981); *State v. Bryant,* 287 Minn. 205, 177 N.W.2d 800 (1970).

In addition, the plaintiffs suggest that the city ordinance requiring availability for police inspection during business hours cannot serve as any sort of justification for clear violations of Fourth Amendment privileges. Similarly, in response to the movants' contention that they should be relegated to their state court remedies under a theory of false arrest, the plaintiffs cite authority for the proposition that *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68

L.Ed.2d 420 (1981), is inapplicable when the constitutional rights allegedly violated are of a substantive—as opposed to procedural—nature. Finally, the plaintiffs argue against the present motion for summary judgment on the simple basis that there are genuine issues of material fact in dispute—most notable among them, whether plaintiff Ronald Higgins actually engaged in sexual conduct in the movie-viewing booth.

As the Court's extensive discussion of the parties' opposing positions indicates, the central issues presented by the pending motion for summary judgment—among them, the import of a discretionary decision not to prosecute actions for which individuals are arrested and the precise nature and scope of any right to privacy while engaging in sexual conduct in an adult bookstore movie booth—are not susceptible of simple resolution. At the same time, the Court concludes, based on its careful review, analysis, and consideration of the several arguments articulated in support of and in opposition to the present Rule 56 request, that the motion must be denied, if only because, on the record compiled to date, the defendants have not demonstrated their unmistakable entitlement to judgment as a matter of law.

### RULE 56 AND THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Court of Appeals for the Seventh Circuit has recently articulated again those well-established standards to be applied by the trial court judge in resolving a motion for summary judgment like the present:

It is well accepted that the purpose of summary judgment is to prevent an unnecessary trial where, on the basis of the pleadings and supporting documents, there remains no material issue of fact to be tried. *Kirk v. Home Indemnity Company,* 431 F.2d 554, 559 (7th Cir. 1970). Summary judgment is appropriate only if it appears that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fitzsimmons*

*v. Best,* 528 F.2d 692, 694 (7th Cir.1976); Fed.R.Civ.P. 56(c). The burden is upon the moving party to show that there is no issue of material fact in dispute, *Rose v. Bridgeport Brass Company,* 487 F.2d 804, 808 (7th Cir.1973), and all doubts as to the existence of an issue of material fact must be resolved against movant. *Moutoux v. Gulling Auto Electric, Inc.,* 295 F.2d 573, 577 (7th Cir.1961).

*Moore v. The Marketplace Restaurant, Inc.,* 754 F.2d 1336, 1339 (7th Cir.1985) (citing *Dreher v. Sielaff,* 636 F.2d 1141, 1143 n. 4 (7th Cir.1980)); *see also Brown University v. Kirsch,* 757 F.2d 124, 129 (7th Cir.1985) (noting that "summary judgment is to be cautiously invoked to the end that parties may always be afforded a trial where there is a bona fide dispute of facts between them"); *Munson v. Friske,* 754 F.2d 683, 690 (7th Cir.1985) ("By entering summary judgment for a party, the district court is concluding that based on the evidence upon which the plaintiff intends to rely at trial, no reasonable jury could return a verdict for the plaintiff").

Applying these general standards to the circumstances of the present case, the Court, as indicated above, simply cannot conclude that the defendants are entitled to entry of the favorable judgment they seek. As a preliminary matter, the Court notes that the opposing affidavits submitted by the individual plaintiffs and the arresting officers plainly reveal several factual disputes. Among other things, plaintiff Czerniak states that the individual occupying the adjoining movie-viewing booth, later identified as Police Officer Conroy, requested that they participate in sexual activity in their respective booths. Defendant Conroy, on the other hand, reports that no sexual conduct was initiated at his request and, in fact, that he specifically stated that he would not engage in any sexual activity when plaintiff Czerniak inserted his penis through the hole in the adjoining booths.

More significantly, co-plaintiff Higgins expressly denies in his affidavit that he committed any act of indecent exposure in

his movie booth and further recounts his explicit refusal of defendant Erdman's invitation to engage in sexual conduct. Yet arresting Officer Erdman testifies unequivocally that he heard heavy breathing in the adjoining movie booth, looked into that cubicle through the oblong-shaped hole, and observed the individual therein, later identified as plaintiff Higgins, masturbating.

■ While these factual discrepancies with respect to the circumstances of the plaintiffs' arrests are plainly not insignificant, the Court is inclined to believe that they may not be sufficiently material, standing alone, to preclude the entry of summary judgment in the defendants' favor. *See Western Transportation Company v. Wilson and Company, Inc.*, 682 F.2d 1227, 1229 (7th Cir.1982) (holding that an issue of fact must have legal probative force as to some controlling issue in the lawsuit in order to be genuine); *Searer v. West Michigan Telecasters, Inc.*, 381 F.Supp. 634, 638 (W.D.Mich.1974), *aff'd without opinion*, 524 F.2d 1406 (6th Cir. 1975) ("A dispute as to immaterial facts does not bar summary judgment"). At the same time, the Court is unable to conclude, on the basis of the record compiled to date, that the arrests of the named—and perhaps other—plaintiffs for engaging in sexual activity in adult bookstore booths were not violative of their substantive rights under the federal constitution but were, instead, based on probable cause to believe that the law had been violated.

Perhaps most damaging to the defendants' position is the memorandum prepared by former Deputy City Attorney David A. Felger on or about October 27, 1983, discussing options for the reevaluation of city policy with respect to the arrest and subsequent prosecution of individuals apprehended for engaging in sexual conduct in movie-viewing booths. According to Mr. Felger, the Vice Squad "concedes that those who masturbate in their own booth enjoy a right to privacy"; however, vice officers apparently justify arrests for indecent exposure or disorderly conduct on the basis that *"their* right to privacy is invaded

when their neighbor's penis enters their booth." Attachment 5 to Plaintiffs' *Memorandum In Opposition to Motion for Summary Judgment* at 1–2 (September 25, 1984). Facially, these comments appear to be admissions by the defendants in 1983 that they viewed such booths as private places.

The apparent difficulty with the defendants' position is underscored further by the unequivocal statement of current policy of the Office of the City Attorney, as articulated by Mr. Felger in his October 27, 1983, memorandum, as follows:

> Our current office policy is based in part on public policy; in part on existing case law. We believe that the pursuing of these cases by our office fosters poor police work and should not be encouraged. We feel that police officers should not be sitting in movie booths peeping through holes or waiting for a penis to arrive. We believe this endeavor to be a waste of already limited police resources.
>
> Our policy is also based upon existing case law. (See Attached). The cases that have dealt with this area have relied in part upon *Katz vs. United States* 389 U.S. 347, 351, 352 [88 S.Ct. 507, 511, 512, 19 L.Ed.2d 576] (1967). The two fold requirement of *Katz* is that a person have an expectation of privacy and that that expectation be reasonable. The cases state that this type of conduct is protected by that doctrine. The District Attorney's Office no longer prosecutes these types of cases based upon the same legal theory. However, in informal discussions with our three Municipal Court Judges, they feel that these cases should be prosecuted and that they would convict such "offenders".

Attachment 5 to Plaintiffs' *Memorandum in Opposition to Motion for Summary Judgment* at 2 (September 25, 1984). The import of the City Attorney's non-prosecution policy is also confirmed by Mr. Felger's deposition testimony, in which he describes both the nascence of the practice and its practical implementation, as follows:

We have a procedure when we refuse uniformed municipal citations that when we review a case, on the back of the citation we write the reason why we are refusing on the back of those citations. We explain the reason that it was both our office policy which was based in part upon existing law in other jurisdictions. So, [Milwaukee police officers] would have been informed that way and, of course, in reading the first [newspaper] article by [reporter] Mary Zahn it was quite apparent that the police knew about it since they were quoted, and I think it was the same officer who was quoted at that time, Inspector Leroy Jahnke, who was quoted in the September, 1983 article.

Attachment 4 to Plaintiffs' *Memorandum in Opposition to Motion for Summary Judgment* at 6 (September 25, 1984). As indicated above, the City Attorney's non-prosecution policy is further evidenced in the extensive notes on disorderly conduct and indecent exposure citations, as compiled by Margaret Montagnino under her affidavit of March 1, 1984.

■ To be sure, this apparently uncontested discrepancy between the arrest policy of the Milwaukee Police Department and the prosecution practice of the City Attorney's Office does not perforce establish the illegality of the arrests made for sexual conduct in adult bookstore movie booths; indeed, in order to succeed on their principal claim of violations of their rights under the Fourth, Ninth, and Fourteenth Amendments to the federal constitution and their pendent claims for false arrest, false imprisonment, and intentional infliction of emotional distress, the plaintiffs will surely need to develop a complete and convincing record with respect to the particular circumstances of their individual arrests, the reasonableness of the arresting officers' conduct, and, more generally, the precise nature and scope of the constitutional privacy right that forms the centerpiece of this litigation. With respect to this latter issue, the Court need not and, indeed, specifically declines to make at this stage in the proceedings any substantive ruling with respect to the right of individuals to engage in consensual sexual activities in movie-viewing booths in adult bookstores. That critical issue and several others identified in today's opinion are best left to resolution upon a complete development of the factual record and a thorough exposition of the legal theories upon which the opposing parties rely.

■ What the Court does, however, decide by today's ruling is that the apparent practice of the Milwaukee City Police Department in arresting individuals for sexual conduct in such booths, with the knowledge that those individuals will not likely be prosecuted by the City Attorney, should be considered and weighed carefully in determining the reasonableness of the officers' conduct in apprehending the individual plaintiffs now prosecuting this lawsuit. If, based on the totality of the circumstances, it appears at trial that the police department did, indeed, have reasonable cause to believe that violations of the law had occurred, both the federal constitutional and pendent state claims articulated in the plaintiffs' complaint will likely be dismissed. If, on the other hand, the evidence tends to show that these and other plaintiffs were arrested and imprisoned without probable cause, the Court may be inclined to award them the injunctive and declaratory relief and compensatory and punitive damages they now seek. For the present, however, the several mixed questions of fact and law presented by this case preclude the Court from determining that either set of parties is entitled to judgment as a matter of law.

## CONCLUSION

For the reasons articulated above, the Court hereby DENIES the defendants' motion for summary judgment, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure.

In order to ensure that the prosecution and defense of this action now proceed apace, the Court will conduct a pretrial conference at *9:30 a.m., on Wednesday,*

*August 7, 1985.* Counsel for the parties are instructed to come to that hearing fully prepared to discuss the further litigation of this matter, including, as appropriate, their intentions for the completion of discovery, their plans for the filing of any additional pretrial motions, and their expectations for the trial of this case. Counsel should also be in positions to discuss their respective clients' perspectives on settlement, if any.